Charles P. Swigert, Auditor, *et al.*

*v.*

The County of Hamilton.

*Filed at Springfield October 31, 1889.*

1. Municipal funds—*in the State treasury—refunding thereof to the municipality—the statute construed.* Where taxes have been collected for the payment of registered bonds of a municipal corporation, and interest thereon, a part of which bonds have been declared void, and the money arising from such taxes is in the hands of the State Treasurer, but the amount in his hands collected for the payment of the void bonds as distinct from the bonds which are valid, has not been definitely ascertained, it is not the duty of the Auditor of Public Accounts to issue his warrant on the Treasurer for the refunding of the money to the municipality, and he will have no authority of law so to do, and if he should issue his warrant for the unascertained amount, it could not be paid, and therefore *mandamus* will not lie to compel him to issue such warrant.

2. Certain county authorities had issued two series of bonds in aid of the construction of railroads, the first series being for $200,000 and the second for $37,000, payable at a future day, with interest coupons attached, the first of which series was by this court adjudged void. Both series of bonds were registered. Taxes were levied and collected to pay the interest on all the bonds, and came into the hands of the State Treasurer before the first series was adjudged void. Without any adjustment of the amount in the hands of the State Treasurer derived by taxes for the illegal bonds, the county board sought, by *mandamus*, to compel the Auditor to issue his warrant in its favor upon the State Treasurer for the amount of such illegal taxes: *Held,* that it was not the duty of the Auditor to ascertain the amount for which he should draw his warrant, and that he had no authority of law to issue such warrant for an indefinite and unascertained amount.

3. The act of June 10, 1885, in relation to the refunding of surplus funds in the State treasury to counties, cities, etc., does not contemplate a case in which only a part of the bonds of a county shall be paid or held void. That act provides for the repayment of the balance of the county fund in the hands of the State Treasurer only in cases where there are no other valid bonds issued by such county, registered in pursuance of law, to which such balance of funds may be applied.

4. Where a county has funds in the hands of the State Treasurer, collected to pay interest coupons on its bonds registered according to

law, a part of which bonds have been adjudged void, such funds may be legally, under the statute, applied to the payment of the valid bonds of such county. ·

5.  Where all the registered bonds of a county are paid, or when all to which the fund can be applied have been judicially declared void, the balance of that fund in the State treasury does not rest in computation, but is a definite amount, being the whole of that which remains. In issuing his warrant in such case the act of the Auditor would be purely ministerial.

6.  MANDAMUS—*whether it will lie.* The writ of *mandamus* will not be awarded in any case unless the relator shows a clear legal right to have the thing sought by it done, and in the manner asked. It will never be awarded in a doubtful case, or where it will prove barren or fruitless, or can not have a beneficial effect.

7.  Every material fact necessary to show the plain duty of the respondent to act in the premises, must be set forth by the party seeking to compel the performance of an act. The burden is always on the relator to clearly establish the right sought to be enforced. It must in all cases clearly appear that the officer against whom the writ is asked *is actually in default in the performance of some act which the law specially enjoins as a duty resulting from his office.*

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is a *mandamus* proceeding to compel the payment of money alleged to be in the State treasury belonging to the petitioner.

It is alleged in the petition, that in October and November, 1871, the petitioner, Hamilton county, issued and delivered to the St. Louis and Southeastern Railway Company, $200,000 of its bonds, payable in twenty years, with seven per cent interest, payable on the first days of January and July of each year,—which bonds were duly registered in the office of the Auditor of Public Accounts; that said bonds have been decided by the Supreme Court of the State of Illinois to be void,—a certified copy of which decision was, on the 18th day of June, 1888, delivered to each of the defendants; that on the 23d of June, 1888, the county board of said county passed a resolution requiring the Auditor of Public Accounts

to issue his warrant upon the State Treasurer for the amount of money that might be in the State treasury to the credit of the county of Hamilton, of the money levied and collected to pay the interest on said $200,000 in bonds of said county of Hamilton, payable to John B. Standerfer, county treasurer of Hamilton county; that on the 25th day of June, 1888, the county clerk of Hamilton county forwarded a duly certified copy of said resolution to the Auditor; that the Auditor acknowledged its receipt, and refused to comply, for the reason, as alleged, that there "are other valid registered bonds to which said tax can be applied;" that the other valid bonds to which said Auditor proposes to apply said taxes, were a separate and different series of bonds from said $200,000; that the valid bonds referred to are thirty-seven in number, for the sum of $1000 each, and were issued by the county of Hamilton on the first day of January, 1872, to the Evansville and Southern Illinois Railroad Company, payable to it or bearer twenty years after the date thereof, with interest at seven per cent per annum, payable semi-annually, with coupons attached; that the money now in the State treasury, which has been collected by taxation off the property and tax-payers of Hamilton county to pay the interest on the said $200,000 bonds, amounts to about $17,500, the exact amount of which is not known to petitioner; that about $14,000 of said $17,500 was collected, by taxation, off the property and tax-payers of Hamilton county during the year 1887, and during that year there were objections filed to the delinquent tax list on account of the illegality of said tax to pay interest on said $200,000 in bonds, and such objections were sustained by the county court of Hamilton county, and judgment on said delinquent list refused to the amount of about $1700, which is not and will not be paid,—so that if the money in the State treasury was applied, as said Auditor proposes, towards the payment of said $37,000, it would be an unjust, unlawful and unequal application of said $17,500 upon said bonds of

$37,000, which is a debt that, if paid at all, should be paid by all the property owners and tax-payers of Hamilton county equally and uniformly upon all property, by all tax-payers alike; that said $17,500 was unlawfully collected, and can not be lawfully appropriated or applied for any purpose by the Auditor or State Treasurer only to return it to the county treasurer of Hamilton county, under the act of June 10, 1885, when it may be returned to the tax-payers who paid it. Yet the Auditor has neglected and refused to draw his warrant and comply with the request of the county board of Hamilton county, whereby the tax-payers are prevented from receiving from said county treasurer the respective amounts of taxes paid by them and each of them, and the county of Hamilton is deprived of the legitimate use of so much of said money as may not be called for by said tax-payers.

The prayer is for a writ of *mandamus*, directed to Charles P. Swigert, Auditor of Public Accounts, or his successor in office, to compel him to draw his warrant on John R. Tanner, State Treasurer, or his successor in office, and that said Auditor be compelled to draw the same, payable to John B. Standerfer, county treasurer of Hamilton county, for said sum of $17,500, or such balance as may be in said State Treasurer's custody that has been collected to pay interest on said $200,000 bonds, and that such further order may be made as justice may require.

The Auditor answered, admitting the issuing and registry of the $200,000 of bonds mentioned in the petition, and then avers, that there are and have been registered in the office of the Auditor of Public Accounts, ten years and more last past, bonds of Hamilton county, other and different from the said bonds of $200,000, which bonds have never been declared void by any court, and are existing and valid bonds and claims, as registered bonds, against said Hamilton county; that it is the duty of the Auditor of Public Accounts to certify, annually, to the county clerk of Hamilton county, the rate of tax necessary

to be collected to pay, annually, the interest of said bonds when the same shall become due, together with an estimate of the expense of the collection and payment of said bonds or interest, and that during all said time he has performed that duty; that the registered bond account of Hamilton county with the Auditor is kept as one account, and the amount requisite to pay the interest, or the principal and interest, due upon the registered bonds, is and has been annually certified to the county clerk of said Hamilton county in the aggregate as one sum, and not as separate and specific sums, for the paying of separate and specific issues of bonds, and that said amounts collected and returned to the Auditor of Public Accounts are collected and returned as one amount due to the registered bond fund account of said office from the county of Hamilton; and the said Auditor is not required to keep a separate account of such funds, and has no means of determining, from the records of his office, the amount of money in the hands of the Treasurer of the State of Illinois collected or paid on account of the specific bonds alleged in said petition to have been declared void; he avers that there are existing valid bonds of the county of Hamilton, to the payment of which, funds in the hands of the Treasurer of the State of Illinois, to the credit of the registered bond fund of the county of Hamilton, are applicable, the payment of which will absorb all the funds now in the hands of the Treasurer of the State of Illinois to the credit of the registered bond fund of the county of Hamilton, and to the payment of which, and the necessary expenses connected therewith, the same will be applied as far as the same may be lawful. He denies that there is any money in the treasury of the State of Illinois to the credit of the county of Hamilton, but avers that whatever money is in the hands of the Treasurer, collected by reason of the amount certified by the Auditor of Public Accounts to the county clerk of Hamilton county necessary to pay the registered bonds and the interest thereon of said county, is to the credit of the reg-

istered *bond fund* of Hamilton county, and is applicable to the payment of said bonds so long as there shall be any unpaid registered bonds of said county. He avers that the thirty-seven bonds, amounting to $37,000, referred to in the petition, were registered with the Auditor of Public Accounts long prior to the beginning of this suit; that the same are valid and unpaid; that interest is due and payable yearly, and the bonds are subject to call for payment by the county at any time, and the entire amount of money in the hands of the Treasurer of the State of Illinois to the credit of the registered bond fund of the county of Hamilton is applicable to the payment of these bonds, and is liable to be required for their payment at any time when the bonds shall be called for payment, and the same is being applied to the payment of the interest which falls due annually upon said bonds, and said funds will be wholly absorbed by the payment of the interest and the principal of said bonds. He denies that there is in the hands of the Treasurer $17,500, or any other sum, unlawfully collected off the property or tax-payers of Hamilton county; denies that there is any money in the treasury which it is his duty to order returned to the county treasurer of Hamilton county, under the act of the General Assembly referred to in the petition.

No answer was filed by the Treasurer. There was a hearing on the petition, answer of the Auditor, and replication.

The petitioner introduced in evidence a certificate of the State Treasurer, of February 4, 1889, certifying that there was in the treasury, to the credit of Hamilton county bond fund, the sum of $17,824.98, and that there were out-standing, unpaid, past due interest coupons from said $37,000 of bonds, to the amount of $315. Petitioner then called John T. Peters, of the Treasurer's office, who testified: "The railroad debt of Hamilton county is $237,000. There were two issues of bonds,—one of $200,000 and one of $37,000. Unpaid coupons referred to in the certificate are on the $37,000 bonds. They were not paid because they were not presented.

The money on hand, as shown by the certificate referred to, was collected to pay the interest on the $200,000 bonds as well as the $37,000 bonds. The interest on both bonds would be paid out of that fund if not restrained. There has been nothing paid on the $200,000 bonds since they have been declared illegal. In the office of the Treasurer we keep one joint account,—one general account for Hamilton county. In the Treasurer's office the interest is paid from the record furnished by the State Auditor. He himself levies the tax, and furnishes us the record by which to pay, and as it is paid it is checked off from that record. But our registered account with the bond fund of the county is kept all together—we do not keep it separate."

*Cross-examination.*—"This account is kept as one account with the registered bond fund of Hamilton county. The money is so paid to our office. The money is not paid to our office, a distinct part of it for the payment of any particular bonds or interest on these bonds. All the money that comes into our hands to the credit of Hamilton county bond fund is applicable to any and all registered bonds or coupons which may be due or presented to us, unless such payment is enjoined. Officially, our office has no means of knowing what amount of levy is made for the payment of registered bonds and coupons. When money is paid to our office for the levy of any one year, we can not know whether that is the full amount of the levy. If all taxes were collected proportionately, none enjoined, same on both issue of bonds, and none restrained from collection while others are being paid, 200-237ths of the registered bond fund collected for the payment of interest would be used to pay interest on the $200,000 bonds, and 37-237ths on the $37,000 bonds. The money in the treasury to the credit of the Hamilton county bond fund is all applicable, if it required that amount, to the payment of the interest of the $37,000 bonds. Where the interest is not due, the registered bond fund may be applied, under the law, to the payment of bonds

before they are due, if presented. Under the decision of the court, we can not pay any more interest on the $200,000 bonds, and that gives a surplus, which, under the law, can be applied to the payment of any bond presented, even *before due,* if the holders want to surrender them, and without the consent of the county. This money was collected to pay interest, but the law provided that where it is not needed for interest, any surplus shall be applied to the principal."

Also, W. H. Henkle, who testified he was employed in the Auditor's office. "The rate levied by the Auditor for the year 1887, for the payment of interest on Hamilton county registered bonds, was one dollar on the hundred on the assessed equalized value of the property. Part of that fund is now in the treasury. I am unable to state what amount was realized on that levy. The full amount of the levy was not collected. We intended to raise $15,352. There was a surplus in the treasury, when this levy was made, of $1390. At the time we make the levy, we ascertain the full amount in the treasury to the credit of the bond fund, and get the amount of the outstanding unpaid coupons due or to become due before the first levy is made, and take the one from the other, and that leaves the surplus. These coupons, sometimes outstanding, run back a series of years, and it may be that the difference, if any difference, between the amount now in the treasury and the amount levied and computed in the treasury at the time of the levy, is the coupons that are still outstanding and have not been presented. It not infrequently occurs to have coupons running back eight or nine years; that certificate was made to the county clerk October 25, 1887. No levy was made last year, 1888, because of the decision of the Supreme Court. The fund now in the treasury can be applied to the payment either of principal or interest of the $37,000 bonds, according to the record of our office, the record showing the bonds subject to call. Although the $37,000 are not due until 1892, I think the fund in the treasury could be applied,

without the consent of the county, to the payment of the bonds before they are due. Even if they were payable at the end of five years from date, at the will or option of the county, the Treasurer would be authorized to pay them, without the consent of the county."

*Cross-examination.* — "The records of the Auditor's office show the issue of $37,000 of bonds to be subject to call. The levy made by the Auditor is one single rate to cover the full amount of principal or interest, as the case may be, of the entire issue of bonds registered, and when the funds are received, they are ordered by the Auditor to be turned over to the State Treasurer, to be credited to the bond fund, and passed to the particular locality,— in this case, Hamilton county. It is levied as one rate, for all purposes, for the payment of registered bonds, and the money in the treasury is applicable to the payment of any registered bonds in Hamilton county, provided there is a surplus over and above the amount needed to pay the interest for the ensuing or current year. By reason of this surplus in the treasury no levy was made in the year 1888 for the payment of the interest falling due on the $37,000 valid bonds, up to and including January, 1890. The levy made, includes an allowance for expenses, and usually there is an abatement on some part of the registered bond fund tax on different accounts or different pieces of property. There was an abatement of a portion of the amount levied for the years 1887 and 1888. It is not true that the 200-237ths, or any part of the fund collected, is set aside for the payment of the $200,000 bonds, or any particular bonds. The full amount is dedicated to the payment of the entire interest that may be due. If one issue of valid bonds should be presented before the presentation of a different issue of valid bonds, and the amount in the treasury would only be sufficient to pay the first issue presented, it would all be applied for that purpose. If the usual levy had been made, and there had been no injunction to stop the payment

of any part of this fund, there would have been a surplus in the treasury over and above the payment of all interest and coupons at the time of making the last levy—October, 1888. It can not be said that when you take out of the total amount in the treasury to the credit of the registered bond fund, the total amount of any one issue of bonds, or interest thereon, the remainder is a levy for the payment of the other bonds." —Which was all the evidence introduced by either party on the trial of the cause.

No evidence was offered by the respondents. The court below ordered a peremptory writ to issue, commanding the Auditor to draw his warrants for the sum of $14,919.98, and the Treasurer to pay the same, as prayed in the petition. The Auditor appeals.

Mr. GEORGE HUNT, Attorney General, for the appellant.

Mr. WILLIAM HAMILL, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court :

The act of June 10, 1885, under which the petition is filed, is entitled "An act making provision for the refunding of surplus funds that are now or hereafter may be in the State treasury to the credit of bond funds of counties, cities, towns, townships, school districts, or other municipal corporations having bonds registered in the office of the Auditor of Public Accounts, when such bonds have been paid or cancelled, or when the bonds purporting to have been issued by any county, etc., and registered in the office of the Auditor aforesaid, shall be held, or the law under which said bonds purport to have been issued shall be held, void by the Supreme Court of this State or the Supreme Court of the United States."

The second section, on which appellee's right of recovery is based, is as follows :   "Whenever the Supreme Court of this State, or the Supreme Court of the United States, shall hold

any bonds void, purporting to be issued by any county, township, city, town, school district or other municipal corporation, registered in pursuance of law in the office of the Auditor of Public Accounts, or whenever the act under which such bonds purport to have been issued shall be held to be void by the Supreme Court of this State or Supreme Court of the United States, and there remains in the State treasury a balance of funds to the credit of the bond fund of such county, township, city, town, school district or other municipal corporation purporting to have issued said bonds, and there are no other valid bonds issued by said county, township, city, town, school district or other municipal corporation registered in the office of the Auditor of Public Accounts in pursuance of law, to which said balance of funds may be applied, it shall be the duty of the Auditor, upon receipt of certified resolution provided for in section 3 of this act, to draw his warrant on the State Treasurer for the amount of said balance, and he is hereby authorized to pay the same out of the proper fund."

The first question suggested by an examination of this record is, what specific duty is the Auditor shown to have refused or neglected to perform. It will be seen that there is nothing, either in the petition or proofs, to show that there was, at any time prior to the rendering of the judgment in this case, any ascertained amount for which the Auditor could have issued his warrant. Had he complied with the resolution of the county board, for anything appearing in the petition or proofs, he could only have made his warrant for an indefinite amount. In fact it clearly appears, that inasmuch as *all* registered bonds of Hamilton county had not been declared void, no ascertained "*balance of funds to the credit of the bond fund of such county*" remained in the State treasury. If, therefore, the county could recover the proportionate part of such balance, which was collected to pay the interest on the void bonds, the amount to which it would be entitled could only be arrived at by computation. But there is nothing in the statute of 1885 which

makes it the duty of the Auditor to ascertain, by any such process, or by any process, the amount for which he shall draw his warrant; and even if it did, this proceeding is not to compel him to perform that duty, but to perform the ministerial act of issuing his warrant for an unliquidated amount. It was not the duty of the Auditor to issue such a warrant. He had no authority of law for so doing, and it would have been wholly unavailing if he had done so. No such warrant could have been paid by the Treasurer. Therefore, *mandamus* will not lie.

"The writ of *mandamus* will not be awarded in any case unless the relator shows a clear legal right to have the thing sought by it done, and in the manner asked." "It will never be ordered in a doubtful case." "The court will always refuse to grant it when it is manifest it will be barren and fruitless, or can not have a beneficial effect." "Every material fact necessary to show the plain duty of the respondent to act in the premises must be set forth by a party seeking to compel the performance of an act." "The burden is always on the relator to clearly establish the right sought to be enforced." "It must, in all cases, clearly appear that the officer against whom the jurisdiction by *mandamus* is invoked, is actually in default in the performance of some act which the law specially enjoins as a duty resulting from his office." These are inflexible rules, applicable to every *mandamus* proceeding against a public officer, settled by repeated decisions of this and other courts. When they are applied to this case, it is clear that the writ should have been denied.

The difficulty with the petitioner's case results from the fact that the act of June 10, 1885, does not contemplate a case in which only a part of the bonds of a county shall be paid or held void. The first section provides for the repayment of any balance to the credit of the bond fund of a county when its bonds have been paid. By its express terms, "*all the bonds* * * * that may have been registered must have been paid."

The second section, under which this petition is filed, provides for repayment of such balance when the bonds have been held void. It expressly limits the recovery to cases in which there *are no other valid bonds issued by such county, registered in pursuance of law, to which said balance of funds may be applied.* Under either section, cases falling within its letter will present no difficulty in a *mandamus* proceeding. If *all* the bonds of a county are paid, or if *all* have been declared void to which the bond fund can be applied, the balance to the credit of that fund does not rest in computation, but is a definite amount, being the whole of that which remains. In issuing his warrant in such case the act of the Auditor would be purely ministerial. The county officers, by going to the State Treasurer, could ascertain the exact balance of that fund, and by resolution of the board request the Auditor to issue his warrant for the amount of such balance, as is required in section 3 of the act.

It is argued on behalf of petitioner, that the fund which the county is seeking to recover can not be legally applied to the payment of the valid bonds of Hamilton county; but it is not denied that a part of the bond fund of the county remaining in the State treasury at the time the $200,000 bonds were declared void, might be applied to the valid bonds. In other words, even on petitioner's theory, there were other valid bonds issued by such county, registered in the office of the Auditor of Public Accounts, in pursuance of law, to which *a part* of said balance of funds might be applied, and that fact renders it uncertain as to what amount the Auditor's warrant shall be drawn for. The bond fund is a unit. When it becomes necessary to apportion it, and say how much belongs to the valid bonds and how much the county is entitled to recover on account of the void bonds, *mandamus* will not lie against the Auditor,—at least until that apportionment has been made, and he is called upon by the county to issue his warrant for a definite amount.

We are also of the opinion, that, under the various provisions of our statute, the bond fund of Hamilton county remaining in the State treasury may be legally applied to the payment of the valid bonds of said county. But in the view we take of the case it is unnecessary to discuss that question.

The judgment will be reversed.

*Judgment reversed.*