THE PEOPLE OF THE STATE OF ILLINOIS.

*v.*

ILLINOIS CENTRAL R. R. CO.

1. MANDAMUS—*return.* The return to the alternative writ in this case having traversed all the material allegations in the writ, a demurrer thereto was overruled, and leave given the relator to withdraw the same, and make an issue of fact.

2. SAME—*when granted.* A writ of mandamus is never granted, of course, but only at the discretion of the court, and only where some just and useful end is to be attained.

3. ILL. CENTRAL R. R. CO.—*sale of its lands on credit.* By the act of 1854 (Sess. Laws 192), a reasonable discretion was granted to this company to sell its lands upon credit, and authority may properly be inferred to fix a reasonable minimum price.

4. SAME—*abuse of power.* The courts have power to control any attempted abuse of the authority to sell on credit. The credit should not be extended so long as to postpone to an indefinite or an unusual time the day of payment. The price should not be so regulated ·as to prevent, or unreasonably retard, sales.

5. SAME—*collecting purchase money.* The company should not permit purchasers to retain the purchase money after maturity to evade the law, or with the view of relief from taxation, but should use all usual and reasonable efforts to enforce collections without unnecessary harassment or rigorous oppression of the debtor. Ordinary delay, not intended to further any bad or unlawful purpose, will not afford sufficient grounds for awarding a writ of mandamus.

6. SAME—*compelling sales.* The provision in the charter of the company directing that all the lands remaining unsold at the expiration of ten years from the completion of the road and its branches, shall be offered at public sale annually, until the whole is disposed of, imposes a duty in such vague and general terms, that this court, in view of the serious consequences and difficulties in the way, does not feel justified in enforcing it by *mandamus* without further legislation. If the legislature should prescribe the terms of sale, the mode in which it should be conducted, not inconsistent with the rights of the company, and make the directions plain and definite, this court can then act upon its requirements and enforce them.

This was a petition filed by the attorney general, on behalf of the people, praying for a writ of *mandamus* against the Il-

linois Central Railroad Company. The facts and objects are stated in the opinion of the court.

Mr. W. BUSHNELL, Attorney General, for the people.

Messrs. HAY, GREENE & LITTLER, for the respondent.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The attorney general filed a petition, in behalf of the people, asking for a writ of mandamus against the Illinois Central Railroad Company. The case has been submitted as upon a demurrer to the return to the alternative writ.

The allegations to which our attention is first invited, are, that the company has sold divers tracts of its lands granted to it by the State, to divers persons, and has agreed to convey the same at the expiration of four years; that the purchasers have entered into possession, and made valuable improvements thereon; that the lands so sold are now worth, upon an average, thirty dollars per acre; that the company, by its servants and agents, fraudulently and unlawfully agreed with the purchasers, that it would execute a written agreement to convey, upon the express contract and understanding that the purchasers should pay the purchase money—*less a few dollars*—so as to exempt the lands from the payment of State, county, and municipal taxes, by virtue of the following clause in the charter of the company:

"The lands selected under said act of Congress, and hereby authorized to be conveyed, shall be exempted from all taxation under the laws of this State, until sold and conveyed by said corporation or trustees;" and that the company has sold certain lands in the county of LaSalle, which are described, to divers persons, but has not conveyed the same; that the purchase money has been nearly all paid, and in some instances fully paid; and that all this has been done with the purpose and intent of defeating the collection of taxes upon the lands so sold.

The respondent, in its return, positively denies all of the foregoing allegations, and states that they are wholly untrue as charged; that it has endeavored to dispose of the lands, and collect the purchase money for those sold; that if payments have been withheld, it has not been done with the consent of the company; that it has in its employ eight persons, whose sole duty it is to make sales and collect moneys due; besides about seventy station agents, who are authorized to sell lands and collect purchase money; that deeds have been executed in all cases where the lands have been paid for, and such lands reported to the auditor, except in three instances, in which the purchasers have failed to surrender their contracts of purchase and receive their deeds; and that no stipulation or contract has been made with any person that payments and deeds might be withheld for the purpose of avoiding taxation.

It will be seen that the return traverses the allegations of the writ, which charge a collusive retention by the company of the title to lands sold, and wholly or partly paid for, for the purpose of their exemption from taxation. To this portion of the return the demurrer will, therefore, be overruled, and the relator will have leave to withdraw the demurrer, and make an issue of fact.

The original charter of the company directed the sales of lands for cash in hand, or the bonds of the company at par. This clause in the charter was repealed by an amendatory act in 1854. Sess. Laws 1854, 192. This amendment authorized the company to dispose of its lands upon such credit as might be deemed expedient, by contracts for sale and conveyance; and provided that no conveyance of the title should be made until the purchase money should be paid.

Thus, a reasonable discretion was granted to the company to sell upon credit; and authority might properly be inferred to fix a reasonable minimum price. Courts can control any attempted abuse of the authority conferred. The credit should not be so extended as to postpone, to an indefinite or unusual time, the day of payment. The price should not be so regu-

lated as to prevent, or unreasonably retard, sales. Neither should purchasers be permitted to retain the purchase money after maturity, with any purpose of an evasion of the law, or with the view of relief from taxation.

The right to sell upon credit necessarily implies some delay in the collection of the purchase money. The company should use all usual and reasonable effort to enforce collections, without unnecessary harassment, or rigorous oppression of the debtor. But ordinary delay, not intended to further any bad or unlawful purpose, should not invoke the writ of mandamus, which is never granted, of course, but only at the discretion of the court, and when some just and useful end is to be attained.

The alternative writ next alleges that it was the duty of the company, at the expiration of ten years after the completion of its road, to offer, at public sale, annually, all lands remaining unsold, until the whole is disposed of; that the road has been completed for the space of fifteen years last past; and that after the completion of the road, and the expiration of ten years, there remained a large amount of unsold lands.

As to the duty of the company, in this regard, the following is the provision of the charter:

"And all lands remaining unsold at the expiration of ten years after the completion of said road and branches, shall be offered at public sale, annually, until the whole is disposed of."

The prayer of the petition is, that an order be entered, commanding the respondent to offer and expose, at public sale, in manner and form as required by law, all lands now remaining unsold.

The return shows that there was granted to the company about two and a half millions of acres of lands; that at the expiration of ten years from the completion of the road, there only remained unsold, a fraction over eight hundred thousand acres; that over half of this quantity was sold in the years 1868 to 1871, inclusive; that, in endeavors to effect sales, in advertisements, agencies, etc., the company has expended more

than one million and eight hundred thousand dollars; and that, in 1871, it attempted sales at public auction, but without success.

The facts in the return, admitted to be true by the demurrer, show, on the part of respondent, some efforts to dispose of the unsold lands.

But, without any regard to the facts, we can not discern the propriety of an enforcement of the duty imposed upon the company in such vague and general terms, by mandamus. The requirement is, that all lands unsold at the expiration of ten years after the completion of the road, shall be offered at public sale, annually, until the whole is disposed of.

Shall we order the sale of the whole? This would be an assumption of power; for the law contemplated sales during a series of years, unless the whole was disposed of sooner. Shall we fix the terms of sale? The law is silent as to the terms, unless the clause of the charter under consideration is aided by the amendatory act of 1854, which seems to have reference solely to contracts for sale. Shall we direct the time of the year and the places? It would be arbitrary so to do in the absence of any specific directions in the law; and we might thus seriously endanger the rights and interests of the respondent, and cause a sacrifice of the lands without facilitating the object of the law.

Besides, the principal of the bonds authorized to be issued by the charter, was not payable until the year 1875, and then payment was secured by a deed of trust upon the lands. Did the legislature intend that the courts might force a sale of the lands for any—a mere nominal price—without any regard to the deed of trust, and the many thereby to be protected? Then the security intended to be afforded, and which is expressly provided for in the charter, and upon the faith of which the money, for the construction of the road, must have been furnished, becomes a mere empty bubble, by the fiat of a court.

There is too much uncertainty in the language imposing the duty upon the respondent; the consequences to be feared are

too serious to justify the court to enforce the duty by mandamus without further legislation.

If the legislature should prescribe the terms of sale, the mode in which it should be conducted, not inconsistent with the chartered rights of the company, and make the directions plain and definite, we can then act upon its requirements and enforce them.

In the view which we are compelled to take of the law, the peremptory writ is refused.

*Mandamus refused.*