# THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

# MORRIS KETCHUM *et al.* Trustees, etc.

1. MANDAMUS—*not a writ of right.* The writ of *mandamus* is not a writ of right demandable by the State acting through the law officers, but its issue is discretionary with the courts, acting upon existing facts, and viewing the whole case with due regard to the consequences of its action.

2. ILLINOIS CENTRAL RAILROAD LANDS—*compelling their sale.* By the act of the General Assembly in force February 27, 1854, the charter of the

Opinion of the Court.

Illinois Central Railroad Company was so altered and amended as to authorize a sale of its lands upon a credit, and a new contract was thereby entered into between it and the State, which the State has no authority to change without the consent of the company.

3. The act of February 27, 1854, conferred upon the Illinois Central Railroad Company the option of selling their lands for cash, or on such credit as they might deem expedient, and the State has no authority to compel them to sell their lands at a price fixed by law, thus interfering with the right of the company to sell for a larger price upon credit.

4. SAME—*duty of State not to endanger or lessen value of the bonds.* The State having vested the company with power to issue bonds, and with authority to pledge its lands as security for their final redemption, and the company having so pledged them, the State is bound in justice to take no steps which shall in any way endanger the validity of the bonds, or lessen their value.

5. SAME—*court of chancery can prevent collusion between company and purchasers of its lands, to continue exemption from taxation.* If the Illinois Central Railroad Company has, by collusion with purchasers of its lands, permitted a small portion of the purchase money to be withheld, and no conveyance made, so as to continue the exemption from taxation, it has acted in bad faith toward the State, and a bill in chancery, properly framed, on behalf of the State, would bring all such transactions to light, and full power would be exercised by a court of chancery to prevent them in the future.

This was an application to this court, at the suit of The People, for a writ of *mandamus* against the trustees of the lands granted to the Illinois Central Railroad Company.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Messrs. HAY, GREENE & LITTLER, for the respondents.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is a petition filed by the Attorney General, on behalf of the people of the State, praying for a peremptory writ of *mandamus* against Morris Ketchum, Samuel D. Lockwood and John M. Palmer, trustees appointed under section 15 of the act to incorporate the Illinois Central Railroad Company, approved February 10, 1851.

The object of the application is to compel these trustees to dispose of the unsold lands of that company, to effect which the General Assembly passed an act, approved March 28, 1873, entitled "An act to compel the trustees of the lands granted to the Illinois Central Railroad Company to execute their trust." Sess. Laws 1873, p. 115.

The petition was filed to the last January term, and, by agreement, the venue was changed to the Southern Division. The questions arise on demurrer to the return.

A similar petition was presented to this court at the January term, 1872, which, for reasons given in the opinion of the court then filed, was refused. 62 Ill. 510.

To obviate the objections raised by this court to granting the writ, the General Assembly passed the act above cited, and we are again requested to grant the writ, and compel the sale of the unsold lands of this company.

The application is based upon the wording of section 17 of the charter of the Illinois Central Railroad Company. That section is as follows :

" The trustees shall not, at any time during the construction of said road and branches, sell or dispose of lands to an amount exceeding the sum which shall then have actually been expended upon the said work, but may, at the request of the company, sell as the work progresses, so as to meet expenditures actually made on the sections of road completed, as far as the receipts from said sales may go towards their liquidation. And all lands remaining unsold at the expiration of ten years after the completion of said road and branches, shall be offered at public sale, annually, until the whole is disposed of, and the avails applied to the payment of the outstanding bonds of the company as aforesaid, or, if no such bonds be outstanding, said avails shall be paid to the company." Sess. Laws (pr.) 1851, p. 70.

It is admitted the road has been completed more than ten years; that a large quantity of these lands remain unsold, and therefore the writ should be awarded.

It must be remembered that the writ of *mandamus* is not a writ of right, demandable by the State acting through their law officer, but its issue is discretionary with the court, acting upon existing facts, and viewing the whole case with due regard to the consequences of its action.

There are very important considerations involved in this application, and which we are not at liberty to disregard. The entire legislation of the State must be looked to, and the interests of parties other than the people of the State be kept in view.

By the sixteenth section of the same charter. it was provided that, "these lands should be sold for cash in hand, or the bonds of said company at par," and "conveyances were to be executed vesting an absolute title in fee simple to the purchasers."

Was this the law now, was this section in full force, we should have no hesitation in awarding the writ on the showing of the law officer of the State. But, by an act of the General Assembly, in force February 28, 1854, this provision of the charter was so amended and altered as to authorize a sale of these lands upon a credit. By it, a new contract was entered into between the State and the railroad company. containing many stipulations besides the one in the first section.

Section six of the act provides, it shall take effect when accepted by a resolution of the board of directors of the company, which, it is not controverted, was duly adopted by the board, thus giving to the transaction all the elements of a contract.

It was held by this court, in *The People* v. *The Illinois Central Railroad Company*, 62 Ill. 510, that this act repeals so much of the charter as required the lands to be sold for cash, or the bonds of the company at par.

This act of 1854, by its first section, provides that these lands may be disposed of upon such credit as may be deemed expedient, by contracts for sale and conveyance. It would then be optional with the company, in view of this legisla-

tion, to sell for cash or on credit, "by contracts for sale and conveyance."

If the act of 1854 has the force and effect of a contract between the State and the railroad company, we can not perceive wherein consists the authority of the State to change that contract, without the consent of the company. Fixing the price at two dollars per acre, is interfering with the right of the company to sell the lands upon credit, for a larger price per acre. It is made the imperative duty of the company, by the act of 1873, to sell at two dollars per acre, and if that sum is offered, they must be sold, wholly disregarding the right of the company, or the trustees, to sell the lands on credit, "as may be deemed expedient." The question of expediency would involve many and various considerations, among which would be and should be the interests of the holders of the bonds, these lands being a portion of the fund out of which the principal and interest thereof are to be paid.

The State having vested the company with power to issue these bonds, and with authority to pledge these lands as security for their final redemption, and the company having so pledged them, having made such contracts with the holders of their bonds, the State is bound, in justice, to take no step which shall in any way endanger the validity of these bonds, or lessen their value, which would be the result, should the trustees sell these lands for two dollars per acre. These bonds, amounting, it is understood, to about three millions of dollars, mature in 1875, and the lands remaining unsold do not much exceed three hundred thousand acres, and with the railroad property also pledged, are the sole security. Is it just or fair, or in conformity with the contract between the State and the company, in which the bondholders have so large an interest, to depreciate a large part of the securities so greatly as a forced sale at public auction at two dollars per acre would do? Before this is done, it would seem but fair that the bondholders should be heard.

The only possible interest the State can have in these lands, and their speedy sale and conveyance, is, to bring them under the taxing power, from which they are exempt "until sold and conveyed by the corporation or trustees."

It has been a very general belief that, since the act of 1854, permitting the lands to be sold on a credit, the company, by collusion with purchasers, have consented a small portion of the purchase money shall be withheld, and no conveyance made, so as to continue the exemption, for that act expressly provides, that no conveyance of the title of any such lands shall be made until the whole purchase money agreed to be paid therefor shall be made, either in cash or the bonds of the company at par.

If such a practice has obtained, the corporation have acted toward the State in bad faith. A bill in chancery, properly framed, on behalf of the people, would bring all such transactions to light, and full power would be exercised by a court of chancery to prevent them in future, and to compel the corporation to call in the deferred payments, to execute conveyances, and close the transactions, and in this way the lands become subject to taxation. Compelling a sale at public auction for two dollars per acre, can not have this effect on past transactions, and will result in but trifling benefit to the people, whilst it jeopards very materially the security pledged to the bondholders, and violates the contract made with the State, as manifested by the act of February 28, 1854, with the railroad company.

These being our views, we are of opinion a peremptory *mandamus* ought not to issue.

*Mandamus denied.*

Mr. JUSTICE WALKER dissents.

Mr. JUSTICE CRAIG: I do not concur in the decision of this cause.