### The People of the State of Illinois ex rel., etc., v. The City Council of the City of Chicago et al.

1. MANDAMUS—*Granting of Prerogative Writ is a Matter of Discretion.*—The granting of a prerogative writ of mandamus is to a considerable degree a matter of discretion. It is never granted in doubtful cases nor where the right to it is not clear. The person asking for it must show a clear legal right to have the thing asked for. by it done, and done in the manner and by the person sought to be coerced.

2. SAME—*Writ Must Be Effectual.*—The writ, if granted, must also be effectual as a remedy, and it must be within the power of the respondent, as well as his duty, to do the act in question.

Mandamus.—Error to the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge presiding.   Heard in the Branch Appellate

Court at the March term, 1902. . Affirmed.   Opinion filed February 13, 1903.

This is an appeal from a judgment of the Circuit Court refusing to issue a peremptory writ of mandamus.

At a regular meeting of the city council of the city of Chicago held on the seventh day of January, A. D. 1901, an ordinance was passed redistricting the city of Chicago into thirty-five wards. This redistricting was made necessary by reason of the annexation to the city of Chicago of part of the town of Cicero, the number of aldermen prior to the annexation of the territory named being sixty-eight, and the additional territory added to the city of Chicago by this annexation increasing the number of aldermen to seventy. It thereupon became necessary under the provisions of Art. 3 of Chap. XXIV of the Revised Statutes of Illinois, to redistrict the city of Chicago into thirty-five wards. When the new wards had been carved by this ordinance of January 7, 1901, it was found that in the new seventh ward and in the thirty-first ward there was but one alderman residing within the limits of each of the said wards, while in the new second ward and in the new twenty-first ward three aldermen were found to reside within the limits of each of the said new wards. Thereupon the respective political parties in the new seventh and the new thirty-first wards considered that there was a vacancy existing in the office of alderman in each of said wards, and at the following spring election of 1901, the new thirty-first ward and the new seventh ward ballots contained the names of two candidates for the office of alderman, one for the term of two years and one for the term of one year. The petitioners, Fahndrich and Nagel, were declared to have been elected aldermen from the new seventh and thirty-first wards, respectively, for a term of one year, and an attempt was made to seat the two so-called aldermen, but it was found that such action would result in giving to the city council seventy-two aldermen, no vacancy having been declared; manifestly the two petitioners could not be seated unless two of the aldermen then

holding seats were displaced or their offices declared vacant by reason of the passage of the redistricting ordinance above mentioned.

It is claimed by the petitioners that because of the fact that the changing of the boundaries of the various wards resulted in leaving the new seventh ward and the new thirty-first ward with but one alderman having his residence within the limits thereof, a vacancy, therefore, immediately existed in each of said wards, and that because of the fact that a change of the ward boundaries resulted in the new second ward and the new twenty-first ward having three aldermen residing therein, each of said two wards had an over-representation, and that one alderman in each ward should be displaced.

The statute as to redistricting in case of an enlargement of the boundaries of a city is in part as follows :

" Provided, further, that whenever, after such new territory shall have been annexed, as aforesaid, said city shall be redistricted, the number of wards at the time said city is so districted shall be preserved and the city council thereof may in its discretion change the boundary territory of the city, and make said new ward larger or smaller, to comply with the requirements of said act to compactness and equality of inhabitants;

And provided, further, if it shall appear from any census heretofore or hereafter taken, that any city has the requisite number of inhabitants to authorize it to increase the number of aldermen, it shall be the duty of the city council thereof to proceed without delay and redistrict such cities in accordance with the provisions hereof, and to call and hold its next city election in accordance with such new redistricting;

Provided, ' that at such election the aldermen who hold over shall be considered aldermen for the new wards, respectively, in which their residence shall be, unless there shall be two or more aldermen who hold over in the same ward under this proviso, then in such case it shall be determined by lot in presence of the city council in such manner as they shall direct, which aldermen shall hold over for such ward.' "

EDWARD E. PERLEY and FRANK S. LENERT, attorneys for plaintiffs in error.

The People v. City Council of City of Chicago.

CHARLES M. WALKER, corporation counsel, and WILLIAM H. ARTHUR, assistant corporation counsel, attorneys for defendants in error.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

At the time the petition for a writ of mandamus was filed, there was in the common council of the city of Chicago no vacancy. Seventy aldermen, the entire number permitted by law, had been duly and regularly elected and were acting as members of the council. The object of the petition was to create vacancies; to compel action by which two members of the council were to be removed therefrom; the petitioners assuming that if this were done, they would be entitled and allowed to take the place of those members who, as a result of the mandamus proceedings, had been removed.

Petitioners could not properly have asked, and did not ask, that the sitting members who stood in their way should in this proceeding be removed from office, but they asked for the taking of steps which in their judgment would lead to such removal, and under which by appropriate proceedings such removal could be effectual.

So far as appears no election was called and no notice of election given for other than one alderman in each of the thirty-five city wards, which alderman was to be chosen for the term of two years and to fill an impending vacancy about to be caused by the expiration of the term of office of one alderman. It does appear from the petition that by the election of one alderman in each ward, the council would have its full complement of seventy members, after all of the aldermen whose terms were at such election about to expire had retired from the council.

The petition states that one of the petitioners, Charles J. Fahndrich, was before the election held April 2, 1901, duly nominated for alderman for the seventh ward for the term of one year to fill the vacancy in the representation of the said ward caused by the redistricting of the city, and

that petitioner Fahndrich was, April 2, 1901, elected as alderman for the seventh ward for one year.

Our attention has not been called to and we are not aware of any statute requiring that aldermen of the city of Chicago shall reside in the wards, respectively, by which they are chosen. Unless the law does so require, the redistricting did not cause a vacancy in any ward. The statute does require that upon a redistricting under the circumstances existing at the time the redistricting and subsequent proceedings now under consideration are had, if it be the case that two or more of the sitting "hold-over" aldermen reside in one ward, the common council shall determine by lot which of such "hold-over" aldermen shall continue to so hold over.

After this had been done a vacancy would have existed in the representation to which such ward is entitled. Under the allegations of the petitioners that after the redistricting two "hold-over" aldermen resided in the seventh and thirty-first wards, it was the duty of the council under the statute to have ascertained by lot which of such aldermen should continue to represent the respective wards, and a petition for mandamus might, and more properly should, have been filed prior to the calling of any election for alderman.

The statute provides for an election each year for one alderman to represent each city ward. Section 61 of chapter 24, providing for special elections, makes the duty of the calling special elections permissive and not mandatory, the section being as follows:

"If there is a failure to elect any officer herein required to be elected, or the person elected should fail to qualify, the city council or board of trustees may forthwith order a new election therefor; and in all cases, when necessary for the purpose of this act, may call special elections, appoint judges and clerks thereof, canvass the returns thereof, and provide by ordinance for the mode of conducting the same; and shall give notice of such special elections, in which shall be stated the questions to be voted upon, and cause such notices to be published or posted for the same length of time and in the same manner as is

required in the case of regular annual elections in such cities or villages."

The election of April 2, 1901, having been when there was neither in the seventh nor in the thirty-first ward a vacancy, either existing or impending, other than those for which Frank I. Bennett was in the seventh ward elected, as the petition states, for the full or regular term, and W. M. Butterworth was, as the petition states, elected for the two-year term as alderman, neither of the petitioners were or would have been entitled to seats in the council had it, after such election, proceeded by lot to determine which of the "hold-over" aldermen in the second and twenty-first wards, respectively, should continue to hold over. Had the writ of mandamus been awarded by the Circuit Court it would have been the duty of the council to have made the determination by lot thus commanded, and thereafter it might have called a special election to fill vacancies so created, but the calling of such special election would not have been obligatory.

The granting of a peremptory writ of mandamus is to a considerable degree a matter of discretion. It is never granted in doubtful cases or where the right to it is not clear. The person asking for it must show a clear legal right to have the thing asked for by it done, and done in the manner and by the person sought to be coerced. The People of the State of Illinois v. The Mayor, Comptroller and City Clerk of the City of Chicago, 51 Ill. 17; The People v. Salomon, 46 Ill. 415–419; Commissioners of Highways v. The People, 66 Ill. 339.

The writ, if granted, must also be effectual as a remedy, and it must be within the power of the respondent, as well as be his duty to do the act in question. Springfield and Illinois Ry. Co. v. The County Clerk of Wayne County, 74 Ill. 27; The People v. The Trustees of Schools, 86 Ill. 613; The People v. Supervisor and Clerk of Oldtown, 88 Ill. 202; The Board of Supervisors of Star County v. The People, 110 Ill. 577; The Ohio and Mississippi Ry. Co. v. The People, 120 Ill. 200. The writ is not a writ of right.

The People v. Hatch and The People v. Dubois, 33 Ill. 9; The People v. Curyea, 16 Ill. 547; The People v. The Illinois Central R. R. Co., 62 Ill. 510; The People v. Ketchum, 72 Ill. 212; The People v. Klokke, 92 Ill. 134; Swigert v. County of Hamilton, 130 Ill. 538.

As citizens, taxpayers and voters, either one of petitioners may have had a right to ask for this writ. It is manifest from their petition that in such capacity alone they did not ask nor desire it. They mistakenly assumed that they were elected to fill vacancies already existing, and that if the council were commanded to and did determine by lot which of the " hold-over " aldermen from the second and thirty-first wards should continue to hold over, they, the petitioners, would immediately be admitted to the council as aldermen.

As a matter of mere public right or for the protection of the public interests of the city no one seems to have thought it desirable that such determination by lot should be had, so that vacancies being thus created, a special election might be called and aldermen elected in the seventh and thirty-first wards. Counsel for petitioners admit that not only the terms for which they claim to have been elected, but also that the terms of the " hold-over " aldermen in the second and twenty-first wards long ago expired; that this court is called upon to now determine as to a matter not now existing and that the awarding of the writ asked for would not accomplish that sought by the petition. There are now so far as appears no " hold-over " aldermen in any ward, while the seventh and thirty-first wards have their full representation.

If this court should now direct the awarding of the writ asked for, it is manifest that the thing commanded could not be done. It would be something like a writ commanding a sheriff to hang a person who had long before died. We do not think that the mere question of costs, which counsel consider is now the only matter involved, is of sufficient importance to warrant this court in directing the court below to issue the writ applied for.

The judgment of the Circuit Court is affirmed.