THE PEOPLE *ex rel.* J. Lewis Stettauer

*v.*

PETER B. OLSEN, County Clerk.

*Opinion filed June 23, 1905.*

1. MANDAMUS—*mandamus is not a writ of right.* In the exercise of its discretion the court may refuse a writ of *mandamus,* even though the petitioner has a legal right for which *mandamus* is a proper remedy, if the writ will not operate impartially, or will create confusion and disorder, or will not promote substantial justice, or where its purpose is to settle mere abstract rights unaccompanied by practical benefits.

2. SAME—*when petitioner has no direct interest.* A private citizen has no direct interest which entitles him to a writ of *mandamus* to compel the extension of taxes at a higher rate than that used, where the only purpose of the writ is to increase the revenue of certain departments of the municipality which are not complaining, and the effect would be to increase, and not lessen, his burden of taxation.

3. CONSTITUTIONAL LAW—*party cannot ask courts to determine validity of statute as an abstract question of law.* A party has no standing to ask the courts to determine the constitutionality of a statute as a mere abstract question of law.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

WILLIAM FRIEDMAN, (COLIN C. H. FYFFE, and EDMUND D. ADCOCK, of counsel,) for appellant.

HARRY A. LEWIS, County Attorney, WM. F. STRUCKMANN, JOHN P. WILSON, N. G. MOORE, and FRANK L. SHEPARD, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The aggregate of the amounts certified by the various taxing bodies in the county of Cook to be levied on each $100 of taxable property in said county according to the valuation thereof for purposes of taxation for the year 1904

would have required a total levy at the rate of 7.588 per cent. In obedience to the act of. the General Assembly entitled "An act concerning the levy and extension of taxes," approved May 9, 1901, (4 Starr & Cur. Stat. p. 1125,) commonly known as the "Juul law," the. appellee, Olsen, county clerk of said Cook county, on the 7th day of January, 1905, ascertained the rate per cent of such tax levies as are authorized to be reduced by said "Juul law," and reduced the same to an aggregate of five per cent on each $100 of property as valued and assessed for taxation for the year 1904. On the 19th day of January, 1905, the appellant relator exhibited in the circuit court of Cook county his petition, in which he alleged that the said act of 1901, commonly known as the "Juul law," contravened certain provisions of the constitution of 1870, and was therefore void, and prayed that a writ of *mandamus* be issued requiring the said appellee, Olsen, as such county clerk, to extend against the taxable property in the said county, taxes as certified by the said taxing bodies in full, and not reduced according to the provisions of said alleged unconstitutional enactment of 1901. On the 25th day of January, 1905, the cause was heard in the said circuit court and the prayer of the petition was denied. The relator perfected this appeal from that decision to the April term, 1905, of this court.

. On the hearing in the trial court it was stipulated as follows: "That all the tax rates in the city of Chicago were finally ascertained by this respondent on January 7, 1905; that he immediately commenced the extension of said taxes upon the collectors' warrants, and continued to extend them until he was served with process in this proceeding; that in extending said taxes he employed a large number of assistants, whom he is required to pay out of the earnings of his office; that he had fully completed at least seventy per cent of the work connected with the extension of the taxes for said year 1904, and had delivered to the several collectors in said county a large part of the collectors' warrants, in

which said taxes for said year had been extended; that said collectors have been and are collecting the taxes for 1904 as evidenced by the several books and warrants so delivered to them; that if he is compelled to make a new extension, as demanded, he will be obliged to prepare new books and employ help and assistants to extend the new rates, and that the cost of doing the same will approximate $125,000; that the earnings of his office for the year 1905 will approximate $202,000; that the expenditures of his office during such year, if he should be compelled to prepare new books and extend new rates, will approximate $258,000, leaving a deficit of $56,000; that since the said act of May 9, 1901, concerning the levy and extension of taxes, has been in force, the same has been followed by this respondent and by the various municipalities and the officials thereof; that the valuation and assessment of taxable property in the county of Cook and the several taxing districts within said county, as finally made and equalized by the State Board of Equalization, was completed, published and known shortly prior to December 14, 1904."

The writ of *mandamus* is not a writ of right, and it was largely within the sound discretion of the trial court to refuse to issue it. When a writ of *mandamus* is asked the court may inquire whether it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are vested, may, in view of the consequences attendant on the issuing of a writ of *mandamus,* refuse the writ, though the petitioner has a clear legal right for which *mandamus* is a proper remedy. (*People* v. *Board of Supervisors,* 185 Ill. 288.) The court may act on existing facts and view the case with reference to the consequences of its action, (*People* v. *Ketchum, 72* Ill. 212,) and may consider whether the petition has been presented to settle mere abstract rights, unaccompanied by practical or substantial benefits. *North* v. *Trustees of University of*

*Illinois,* 137 Ill. 296; *People* v. *Masonic Benevolent Ass.*
98 id. 635.

The evils which the petitioner alleged would flow from
the failure of the county clerk to determine the full rate per
cent of taxation asked by the various taxing bodies and levy
and extend the taxes accordingly, were, that "the sanitary
district would not have sufficient money with which to meet
its expense of maintenance, and that it would lose the to-
tal amount levied, as aforesaid, for maintenance purposes,
to-wit, $202,232," and "the city would be unable properly to
police itself or properly to provide protection from fire, or
to clean the streets, and otherwise to provide for the health
and safety of its citizens; that by reason of the reduction
the board of education of the city of Chicago would be
unable properly to conduct and manage the public school
system of the city of Chicago." The duty to be enforced
therefore affected the finances of the sanitary district, the
city of Chicago and the board of education of the city. The
purpose of the relator is the enforcement of a public right
in which he has no concern different or greater than that
of any other citizen of the county. His burden of taxation
would be increased,—not lessened,—by the action the peti-
tion asked to be taken. He has no standing to ask the courts
to determine the constitutionality of the act of 1901, as a
mere abstract question of law. The municipalities into
whose treasuries the taxes to be collected are to go are di-
rectly affected by scaling and reducing the levies as required
by the law of 1901. The relator has no direct interest there-
in and the municipalities are not complaining.

When the relator sought to remedy the alleged wrong
against these municipalities the appellee county clerk had
completed the work of extending the taxes, as scaled and
reduced, against seventy per cent of the different lots, tracts
and parcels of land in the county of Cook, and also against
the like proportionate number of tax-payers of that county,
and had issued to the collectors of taxes a large portion of

the tax warrants, and the collectors had been engaged in collecting taxes at the reduced rate from tax-payers of the county. Since the enactment of the statute of 1901 the county clerk of said county had annually determined and extended taxes in pursuance of the requirements of the act, and that he intended to pursue the same course as to the levy of taxes for the year 1904 must have been known to the relator. All the information or data necessary to enable the petitioner to have prepared his petition was published and publicly made known more than a month before the petition was filed. The relator, it is clear, could have presented his petition before the county clerk had extended such a large portion of the taxes to be collected and before tax warrants had been issued, and before any tax-payer had paid taxes at a lesser rate and in smaller amount than other tax-payers would be required to pay if the relief he asks should be granted. The work of computing and extending the taxes and making out the tax warrants entailed the expenditure of large sums of money, which would be wholly lost if a new computation and the extension of taxes at another rate should be ordered. If the prayer of the petition should have been granted it would have become necessary to recall all the tax warrants that were in the hands of the collectors and to return to each of the many tax-payers from whom collections had been made the amounts paid by them, respectively. All of these matters were proper for consideration by the trial court in exercising the legal discretion with which it was invested to refuse the writ. We do not feel authorized to declare that the trial court abused the discretion with which it was vested to deny the prayer of the petition for the writ.

The judgment is affirmed.       *Judgment affirmed.*