(No. 21022.—)

THE MICHIGAN-GRAND BUILDING CORPORATION, Appellant,
*vs.* CHARLES V. BARRETT *et al.* Appellees.

*Opinion filed October 22, 1932—Rehearing denied Dec. 7, 1932.*

TENNEY, HARDING, SHERMAN & ROGERS, (ROGER
SHERMAN, S. ASHLEY GUTHRIE, and JOHN H. MCBRIDE,
of counsel,) for appellant.

John A. Swanson, State's Attorney, and Roy Massena, (Hayden N. Bell, and Louis H. Geiman, of counsel,) for appellees.

Mr. Chief Justice Heard delivered the opinion of the court:

On February 27, 1931, appellant, the Michigan-Grand Building Corporation, filed its petition for *mandamus* in the circuit court of Cook county against Charles V. Barrett, Edward R. Litsinger and Edward J. Hughes, as members of the board of review, and Robert M. Sweitzer, county clerk of Cook county. The petition alleged, among other things, that the State Tax Commission on August 22, 1928, prescribed general rules and regulations, described as rule 14 and rule 15. Rule 14 provided for the use of uniform standards for the assessment of all town and city lots and parcels of land situated in counties having a population of over 500,000, and rule 15 provided for the form of complaints to be filed by a tax-payer in such counties and for the method of hearing and handling such complaints by the board of review and board of assessors. Rule 15 provided in part as follows: "All hearings and decisions in the review or revision of the assessment of real estate by the board of assessors or the board of review shall be taken in open public meetings of the respective boards." The petition further alleges that it was the duty of the board of assessors of Cook county to assess each parcel of property in the county for taxation for the year 1929 by the application of such uniform rules and practice that every property owner in Cook county should pay a tax in proportion to the value of his, her or its property, and that such proportion should be equal, as nearly as practicable, to the proportion required in other counties in the State; that in assessing the property for taxation for the years 1928 and 1929 the rules and practice of the board of assessors were to ascertain the fair cash market value of each parcel of land

and of each completed improvement thereon as of April 1 of the year for which the taxes were to be levied, and then to fix 37 per cent of the value of the land and improvement as the assessed value for purposes of taxation; that in the event that a building on any parcel of land was not completed on April 1, 1929, the practice followed by the board of assessors was not to assess that building or take into consideration the value thereof in fixing the assessed value of the parcel or property for purposes of taxation unless the building was so far completed as to be under a completed roof before April 10, 1929; that this practice the board of assessors purported to follow in all cases and in fact did follow as to nearly all parcels of property in Cook county; that the rules and practice of the board of assessors were concurred in by the board of review, and the assessed value of various parcels of property for purposes of taxation, as found by application of said rules and practice, were approved by the board of review in the cases coming before it and taxes have generally been extended against real property on that basis; that it was the duty of the board of assessors in fixing the assessed value of petitioner's property for purposes of taxation for the year 1929 to follow the rules and practice generally followed in the case of other parcels of property in Cook county; that the board of assessors in assessing the property of petitioner did not, in fact, perform such duty and did not fix the assessed value by application of said rules and practice but the assessed value was fixed by the board of assessors in an illegal and arbitrary manner and is grossly excessive; that the full fair cash market value of petitioner's property, exclusive of the improvements thereon, was on April 1, 1929, not in excess of $625,000; that after applying the equalization factor of 37 per cent thereto, the assessed value of said land for purposes of taxation for that year should not have been in excess of $231,250; that the board of assessors nevertheless fixed the assessed value of said land for the year 1929

at $283,166; that the building on petitioner's property was not completed April 1, 1929, and the roof had not been constructed on the building on that date, and was not, in fact, completed until after April 10, 1929; that the building should not have been assessed for taxation for the year 1929, but, in any event, the full fair cash market value of the building was on said date less than $1,237,284, so that even if the rule of uniformity had permitted the assessment of the building, the assessed value thereof on April 1, 1929, after applying the 37 per cent factor, should have been less than $457,795.08; that the board of assessors nevertheless assessed the value of the building at $611,784; that the total assessed value of petitioner's property, including land and building, as of April 1, 1929, was fixed by the board of assessors at $894,950, whereas if said board had applied the same rules and practice as followed generally in the case of the assessment of other parcels of property in Cook county the assessed value would not have been in excess of $231,250, and the assessment made by said board is therefore excessive, arbitrary and illegal; that after the assessed value had been fixed by the board of assessors as above set forth and the books containing the assessment had been sent to the board of review, the board of review on November 10, 1930, published a notice in the *Chicago Daily News* that the board would meet on the 24th day of November, 1930, at 10:00 o'clock A. M., for the purpose of reviewing and correcting the entire assessment of real estate in Cook county as made by the board of assessors for the year 1929 and that the board of review would thereafter hold hearings until the entire revision and correction of the assessment was finished, and that complaints must be filed in the office of the board before November 21, 1930; that on November 20, 1930, petitioner filed in the office of the board of review of Cook county a written complaint on a printed form furnished by the board, a photostatic copy of which is set out; that it thereupon

·became and was the duty of said board to grant a hearing to the petitioner upon the complaint so filed and to review the assessment and to correct it; that when the complaint was filed the clerk in charge of the office of the board of review informed the agent of petitioner filing the complaint that it would be heard in due course and that notice would be sent by mail when the hearing would be held; that on February 13, 1931, the tax books were closed by the board of review and delivered by it to the county clerk for extension of the tax without any hearing or consideration of petitioner's complaint and no hearing was ever held by the board on petitioner's complaint, and it has failed and refused to hear the complaint or to review and correct the assessment of petitioner's property for taxation for the year 1929, and that unless commanded otherwise by the writ of *mandamus* prayed herein the board of review will not hold any hearing on petitioner's complaint and the taxes against petitioner's property for 1929 will be extended on the basis of the excessive and illegal valuation fixed by the board of assessors; that the defendant Robert M. Sweitzer, county clerk of Cook county, if not commanded otherwise by order of this court, will proceed to extend the 1929 taxes upon the excessive and illegal assessment fixed by the board of assessors as aforesaid; that if the taxes are extended against petitioner's property on the basis of valuation fixed by the board of assessors the tax levied against the property will be greater in proportion than the tax levied against the owners of other property in Cook county of like value and subject to the same tax, contrary to the provisions of the constitutions of Illinois and of the United States; that petitioner prays that a writ of *mandamus* be issued under the seal of the court commanding the defendants Charles V. Barrett, Edward R. Litsinger and Edward J. Hughes, as members of the board of review of Cook county, to reconvene as such board and to proceed in accordance with law to hear and determine petitioner's complaint thereto-

fore filed with the board and to review and correct the assessment on petitioner's property, and that the defendant Robert M. Sweitzer, as clerk of Cook county, be commanded not to extend the taxes for 1929 against petitioner's property on the basis of the assessment fixed by the board of assessors until the board of review shall have heard and determined petitioner's complaint and shall have reviewed and revised the assessment upon said premises as thereinbefore prayed.

The respondents appeared and answered the petition, the answer of Robert M. Sweitzer, as county clerk, alleging that the assessment books for the year 1929 were delivered by the board of review to him in installments, from January 1, 1931, to February 13, 1931; that it is provided by statute that upon the receipt of the assessment books by the county clerk from the board of review the clerk shall prepare and forward to the State Tax Commission abstracts of property assessed for taxation, which abstracts shall be examined by the tax commission, and that thereupon the tax commission shall equalize the assessments as provided and limited by statute; that the abstracts of property assessed for taxes in the year 1929 were prepared by the clerk and forwarded to the tax commission and by the tax commission equalized and returned to the clerk; that upon the receipt by the clerk of the equalized values from the tax commission the clerk shall calculate the tax rates for the different taxing bodies, which in Cook county number 408, and shall extend the taxes, at the rates so established, in the tax warrant books and deliver the warrant books to the tax collectors of the county; that the directions contained in the statutes of Illinois as to the duties of the county clerk and the county treasurer are single and without exception and the directions and provisions created thereby are mandatory; that the county clerk, after the receipt of the equalized values for 1929, calculated the various tax rates and began the extending of taxes in the

tax books; that the items of real property extension in the county of Cook outside of the city of Chicago number 566,952, of which total 441,312 have been extended and are now on the books, and that the warrant books containing these entries have been delivered to the township collectors and are in process of collection, and, as this defendant is informed and believes, a large portion has been collected; that in the same territory in Cook county outside of the city of Chicago the entries of personal property extensions number 79,561, of which 74,300 have been extended and the books delivered to the collectors and the taxes are in process of collection and to a considerable extent have already been collected; that the items of extension of real property within the city of Chicago number 532,252, of which 441,312 have been extended; that warrants for the collection of a portion of personal property taxes within the city of Chicago have been delivered by the clerk to the treasurer, upon which there have been taxes collected to date in the amount of $2,012,615; that the assessment books, under the law, are prepared for a four-year period for use by the assessors in making assessments, by the board of review in reviewing them and by the county clerk in extending taxes; that when the county clerk has finished with the assessment books in any year in the extension of taxes he re-delivers them to the assessors for the assessments of the succeeding year; that all the assessment books containing the 1928 assessments have been re-delivered by the clerk to the assessors of Cook county, who now hold them in their custody and are entering therein the assessments for the year 1930; that over the books so delivered the clerk and treasurer have no power or control; that all the tax rates of Cook county are calculated upon the county assessment roll as equalized by the tax commission; that any change in the roll for the year 1929 would necessitate a re-calculation of all tax rates and a re-extension of all taxes; that it would be impossible to

use the present tax books for this purpose without erasing the work already done, and that it would be impossible to make such erasure and re-enter the assessments for 1929 without great delay and confusion; that unless the existing books were used it would be necessary to procure new books, which would require at least four months; that if a re-extension of taxes be ordered, a period of six months would be required after the books were received from the board of review and equalized figures received from the tax commission to accomplish the work necessary to bring it to the point where it now is; that under the law the county board of Cook county is required to pass each year an annual appropriation ordinance, in and by which ordinance it is required to appropriate for all expenses to be paid or incurred during the current year; that the county is prohibited from incurring any expenditures except as provided in such appropriation ordinance; that the appropriation made for the purpose of procuring the work of the preparation of the tax books had been largely consumed in the execution of the work up to the present time, and that if this work were to be done over there would be no funds available for the work; that practically all of the taxing bodies in Cook county pay their current operating expenses from the proceeds of loans on tax anticipation warrants; that the county of Cook, and the various taxing bodies thereof, during the year 1929 borrowed the sum of approximately $122,000,000 on warrants issued in anticipation of the collection of 1929 taxes; that in the year 1930 Cook county, and the various taxing bodies thereof, borrowed an additional sum of approximately $122,000,000 on warrants issued in anticipation of the collection of taxes for 1930; that said warrants, together with the interest thereon, which amount to approximately $40,000 a day, cannot be paid unless and until the taxes for the years 1929 and 1930 are collected; that the various taxing bodies of Cook county, and especially the county of Cook, the city of Chicago and

the city schools of the city of Chicago, are confronted with the necessity of providing funds to defray current expenses, and that such funds can be provided only by the sale of warrants in anticipation of the collection of 1931 taxes; that the sale of such 1931 tax anticipation warrants will be attended with great difficulty because of the fact that the tax anticipation warrants for 1929 and 1930 are still outstanding; that in order to accomplish the sale of 1931 tax anticipation warrants it is imperative that the collection of taxes for the year 1929 proceed promptly; that it will not be possible to sell such 1931 tax anticipation warrants if the payment of the outstanding 1929 tax anticipation warrants is not accomplished promptly, and that the granting of the writ of *mandamus* prayed for in the petition filed herein would delay the collection of the 1929 taxes for a long period of time, so that the various taxing bodies of Cook county would not be able to provide sufficient funds to meet current operating expenses and there would be created great public confusion and disorder.

The answer of Charles V. Barrett, Edward R. Litsinger and Edward J. Hughes, as members of the board of review, admitted that the State Tax Commission prescribed rules known as rules 14 and 15, which are substantially as set out in the petition, and that it was the duty of the board of assessors to assess each parcel of real estate in Cook county for taxation for 1929 by the application of uniform rules and practice so that every property owner in Cook county would pay a tax in proportion to the value of his property, such proportion being equal, as nearly as might be practicable, to the proportion required in other counties in the State; that the rules and practice of the board of assessors in assessing property for taxation for 1928 and 1929 was to ascertain the fair cash market value of each parcel of land and each improvement thereon as of April 1 of the year for which taxes were to be levied and then to fix 37 per cent of such fair cash market value as the assessed

value of said property. The answer denies that it was the practice of the board of assessors not to assess a building if it was not completed on the first day of April, 1929, and denies that it was the practice of such board not to take into consideration the value of the building for the purposes of taxation unless it was so far completed as to be under a completed roof before April 10, 1929; denies that the alleged practice of the board of assessors was concurred in by the board of review, that the board of assessors in assessing the property of petitioner did not perform its duty, and that the assessors fixed the assessed value of petitioner's property for the year 1929 in an illegal and arbitrary manner and in a grossly excessive amount; denies that the full fair cash market value of petitioner's property as of April 1, 1929, was not in excess of $625,000, that the building on petitioner's property was not completed on April 1, 1929, and that the full fair cash market value of the building was on April 1, 1929, less than $1,237,284, and further denies that the assessment against petitioner's property for the year 1929 is excessive, arbitrary and illegal. The answer admits that on or about November 10, 1930, the books containing the assessment of petitioner's property were filed with the board of review and that a notice was published as set out in the petition, and admits that petitioner filed in duplicate with the board of review a complaint in writing with reference to the valuation placed by the board of assessors on petitioner's property, and that the complaint was filed within the proper time. The answer denies that it was the duty of the board of review to grant a hearing to the petitioner upon the complaint, but admits that it was the duty of the board to review such assessment. The answer alleges that the board of review reviewed the assessments placed upon the property of all tax-payers who filed complaints before the board, and that in cases where the board was of the opinion that an increase in valuation might be made, it served notice and gave a hearing

to such complaining tax-payer. The answer admits that the agent of petitioner was informed that a hearing would be granted on the complaint in due course, but alleges that in accordance with the statute of Illinois the real estate assessment books for the year 1929 should have been turned over to the board of review by the board of assessors not later than August 12, 1930; that the assessment books were not delivered to the board of review until on or about November 10, 1930; that thereafter, as required by the statutes, the board of review published a notice, a copy of which is set forth in relator's petition; that in response to said notice 40,000 complaints as to the value fixed on real estate by the board of assessors for the year 1929 were filed with the board of review; that said board thereupon proceeded to review and correct the assessments, and in those cases where the board was of opinion that there might be an increase in the valuation as fixed by the board of assessors, it gave notice and a hearing to the complaining tax-payer as provided by statute. The answer further alleges that by the statutes of Illinois then in force the taxes for the year 1929 would become delinquent on April 1, 1931, and that it was necessary that the tax bills be sent to tax-payers by the county collector on or before March 31, 1931; that the work to be done by the county clerk and the county collector after the assessment books were delivered to the county clerk in determination of rates, extension of taxes and sending out of tax bills would require at least forty-six days; that, accordingly, it was necessary for the board of review to complete the work of revision and correction of the assessment as speedily as possible, and not later than February 13, 1931, in order that the tax bills for 1929 might be sent to tax-payers as then required by statute; that warrants in anticipation of the collection of 1929 taxes and in anticipation of the collection of 1930 taxes have been sold by the municipalities located in Cook county; that many of said municipalities were then attempting to sell

warrants in anticipation of the collection of the 1931 taxes; that the credit and financial standing of all such municipalities would be seriously and disastrously affected unless the taxes for the year 1929 were collected by approximately the time when required by statute; that unless the taxes were put into collection by approximately the time required by law there would be financial chaos in all municipalities in Cook county and a breakdown in governmental functions would result. The answer further admits that on or about February 13, 1931, the tax books in possession of the board of review were closed and delivered by the board to the county clerk for determination of the tax rate, and admits that no hearing was granted by the board to the petitioner in this cause. The answer denies that the taxes against petitioner's property for the year 1929 will be extended on the basis of an excessive and illegal valuation. The answer admits that Robert M. Sweitzer has proceeded to extend the 1929 taxes upon petitioner's property but denies that such taxes are excessive and illegal, that the valuation placed on petitioner's property is excessive and illegal, and that the tax levied against such property will be greater in proportion than the tax levied against the owners of other property in Cook county of like value and subject to the same tax. The answer alleges that at the time a complaint is filed before the board of review by a complaining tax-payer there is filed with the complaint a form giving all the information upon which such tax-payer relies for a correction of his assessment, a copy of which form is attached to the answer and marked exhibit "A;" that a duplicate of the complaint is forwarded to the board of assessors, which thereupon returns to the board of review a photostatic copy of the record card of complainant's property required by the rules of the tax commission, a photostatic copy of which record card is attached to the answer and marked exhibit "B;" that the board of review then has before it the information furnished by the tax-payer and full

information furnished by the board of assessors, from which information furnished by the tax-payer and by the board of assessors the board of review can review and correct the assessment.

The petitioner filed demurrers to the respective answers. Upon a hearing the court overruled the demurrers, and the petitioner having elected to stand by them and not to plead over, the petition for a writ of *mandamus* was denied and judgment entered against petitioner for costs. From this judgment an appeal has been taken to this court.

It is to be noted, in the first instance, that appellant in its petition alleges that the extension of the taxes would be contrary to the provisions of the constitution, in that the tax would be greater in proportion than the tax levied against the owners of other property in Cook county of like value. Appellant has overlooked the fact that the constitutional requirement of uniformity is a uniformity existing not solely in Cook county but extending throughout each and every county in the State, and that any assessment levied upon property in Cook county on a basis other and different from that upon which like property of equal value is assessed in the other parts of the State is contrary to the constitutional requirement of uniformity.

Much has been said and many cases cited by the parties in their argument as to constitutional and statutory rights, as to whether certain provisions of the statutes are mandatory or directory, and as to the construction to be placed upon certain legislative provisions of the Revenue law, none of which, in the view taken of this case, is it necessary for us to discuss or determine. In this case respondents filed answers to appellant's petition, demurrers were filed by appellant to the answers, the demurrers were overruled, appellant stood upon its demurrers, the petition was dismissed, and the cause is before us solely upon the record as thus made. By its demurrers it admitted the truth of all the relevant statements contained in the answers, and the de-

murrers will be carried back to search the entire record and to test the sufficiency of the petition in the case as well as the answers. We are not called upon to determine the rights of tax-payers in other and supposititious cases, but are only called upon to determine whether, upon the record as made in this particular case, there was an abuse of discretion by the circuit court in dismissing the petition. The abstract in this case fails to show the complaint made to the board of review, which was a part of the petition and the basis upon which relief must be granted, if at all. Neither does it show the contents of the photostatic copy of the record card forwarded by the board of assessors to the board of review showing the full information furnished to the board of review, and showing the details with reference to appellant's property, its condition and the basis upon which the assessment was made, which are each of them of vital importance in this case.

The list which is called the 1929 list was not, in fact, the 1929 list but was the 1928 list made by order of the State Tax Commission to take the place of the 1927 quadrennial assessment list for the years 1928, 1929 and 1930. During the year between April 1, 1928, and April 1, 1929, improvements were placed on appellant's property, and it, therefore, in 1929 became the duty of the board of assessors to determine the amount, in its opinion, of any change in the value by reason of the improvements thereon and add to the assessment accordingly, setting down the amount of such change in a proper column in the assessment books and fixing the value of lands and improvements separately. This the board of assessors did. The valuation placed on the land itself was not changed by the board of assessors in 1929. Appellant, had it considered this valuation excessive, had a right, when the 1928 assessment was made, to make application to the board of assessors for a hearing with reference thereto and also in that year to the board of review. This it did not do.

When we search the record in this case we find from the admitted facts that the improvements upon the premises (upon which appellant sought to evade the payment of any tax whatever for the reason that the roof had not been completed until in April, 1929,) consisted of a 17-story re-enforced concrete construction store and office building, 100 by 125 feet, placed thereon in 1928 and completed before April 1, 1929, and insured for $1,000,000. The cost of these improvements appellant in its application to the board of review declined to give although this was a part of the information required to be given, upon which the assessment against neither the land nor the improvements for the year 1929 as admitted was excessive, arbitrary or illegal; that the board of review reviewed the assessment listed upon the property of appellant, and was of the opinion that an increase in valuation would not be made upon full information furnished by the tax-payer, as required by the rules of the tax commission, and the information furnished by the board of assessors, and made no change in the assessment; that the quadrennial assessment list upon which such changes were made was not at the time of the hearing of this cause by the circuit court in the possession of the board of review but was in the possession of the board of assessors for the purpose of making the changes required to be made therein for the 1930 assessment; that it is apparent upon the face of the complaint made by appellant to the board of review under the admitted facts in this record, that appellant's property had not been over-assessed and that it was not entitled to any reduction of assessment, but, on the contrary, the valuation placed thereon by the board of assessors was less than that required by law to give uniformity between such property and property of like kind and value throughout the several counties of the State of Illinois. It is therefore apparent that were a writ of *mandamus* to be awarded in this case no beneficial result would be attained, but, on the

contrary, as shown by the admitted facts set up in the answers, greater confusion than that now existing in Cook county with reference to taxation would be caused.

The writ of *mandamus* is a summary writ issued from a court of competent jurisdiction commanding the officer to whom it is addressed to perform some specific duty which the relator is entitled of right to have performed and which the party owing the duty has failed to perform. (*Fergus* v. *Marks*, 321 Ill. 510.) It is an extraordinary remedy, and one petitioning for such writ must show a clear and undoubted right to the relief demanded. (*People* v. *Nelson*, 346 Ill. 247.) It is a high prerogative writ and not a writ of right but is to be awarded in the discretion of the court, and ought not to issue in any case unless the party applying for it shall show a clear legal right to have the thing sought to be done and in the manner and by the person or body sought to be coerced and must be effectual as a remedy if enforced. (*People* v. *Hatch*, 33 Ill. 9; *People* v. *Sweitzer*, 339 id. 28.) The court will refuse to grant a writ of *mandamus* when it is manifest that it will be barren and fruitless or useless or cannot have a beneficial effect. (*Cristman* v. *Peck*, 90 Ill. 150.) In *People* v. *Lieb*, 85 Ill. 484, it is said: "As the writ of *mandamus* is not grantable as an absolute right in all cases and the exercise of the jurisdiction in granting it rests to a considerable extent in the sound discretion of the court, the futility of a grant of the writ at this late hour and the public inconvenience which would ensue if the object sought for by the writ should be attained, in leading to very great embarrassment in the assessment of property and collection of the taxes for the year 1876, might be dwelled upon as considerations to influence the exercise of a wise judicial discretion in the matter." In *People* v. *Olsen*, 215 Ill. 620, this court said: "The writ of *mandamus* is not a writ of right, and it was largely within the sound discretion of the trial court to refuse to issue it. When a writ of *mandamus* is asked the

court may inquire whether it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are ·vested, may, in view of the consequences attendant on the issuing of a writ of *mandamus,* refuse the writ though the petitioner has a clear legal right for which *mandamus* is a proper remedy." In *Kenneally* v. *City of Chicago,* 220 Ill. 485, this court said: " 'The granting of the writ of *mandamus* is discretionary with the court in view of all the existing facts and with due regard to the consequences which may result.' (*People* v. *Ketchum,* 72 Ill. 212; *People* v. *Board of Supervisors of Adams County,* 185 id. 288.) In *People ex rel.* v. *Board of Supervisors,* 185 Ill. 288, we said, p. 293: 'Courts, in granting or refusing writs of *mandamus,* exercise judicial discretion and are governed by what seems necessary and proper to be done in the particular instance for the attainment of justice. Courts, in the exercise of wise judicial discretion, may, in view of the consequences attendant upon the issuing of a writ of *mandamus,* ·refuse the writ though the petitioner has a clear legal right for which *mandamus* is an appropriate remedy.' It has been said that 'the writ is not granted as a matter of absolute right, and where it can be seen that it cannot accomplish any good purpose or that it will fail to have a beneficial effect it will be denied.' (*Cristman* v. *Peck,* 90 Ill. 150; *People* v. *Lieb,* 85 id. 484; *Illinois Watch Case Co.* v. *Pearson,* 140 id. 423.) It has also been held that the writ of *mandamus,* being a discretionary writ, will only issue in a case where it appears by law that it ought to issue, and the court will not order it in doubtful cases. (*Commissioners of Highways* v. *People,* 4 Ill. App. 391.) In *People ex rel.* v. *Davis,* 93 Ill. 133, we said: 'The court exercises a discretion in granting or refusing the writ, and if the right be doubtful it will be refused.' It has been held that the writ will be refused where the granting of it will disarrange the public service.—*People*

*ex rel.* v. *Palmer,* 38 N. Y. Supp. 652." In *People* v. *City of Rock Island,* 215 Ill. 488, it was held that the granting of a writ of *mandamus* is discretionary with the court in view of all the existing facts and with due regard to the consequences which will result.

Under the admitted facts in this case appellant is not entitled to the relief sought and the granting of the writ of *mandamus* would be futile.

The judgment of the circuit court denying the writ of *mandamus* is affirmed.

*Judgment affirmed.*