City of Harvard, Appellee, v. James J. McCauley,
Appellant.

Gen. No. 7,991.

Opinion filed May 14, 1929. Rehearing denied June 18, 1929.

JAMES J. McCAULEY, *pro se*, FRANK J. MAYNARD and D. T. SMILEY, for appellant.

PAUL J. DONOVAN, City Attorney, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action in assumpsit was instituted by appellee against appellant to recover for certain sums alleged to have been paid him without authority of law. The declaration consists of the common counts, accompanied by affidavit of claim. To said declaration appellant filed a plea of the general issue, accompanied by affidavit of merit and notice of special matters of defense.

The special matters of defense relied on were that appellant was city attorney until May 1, 1926; that after said date he did not qualify or enter upon the duties of said office; that on May 12, 1926, he was employed by the board of local improvements as attorney in the matter of certain improvements being made by said city, and received as compensation therefor the sum of $3,683.91; that said payments were voluntarily made by the board of local improvements "and without any fraud or mistake of fact"; that the amount so

paid was reasonable and just for said services, and was paid to appellant at a time when he was not city attorney, and that out of the amounts so paid, appellant in compliance with the conditions imposed by said board paid court costs and the services of other attorneys.

A jury was waived, and a trial was had, resulting in a finding and judgment in favor of appellee for $3,683.91. To reverse said judgment, this appeal is prosecuted.

On the trial, it was stipulated among other things that the City of Harvard has a population of less than 5,000; that on May 1, 1925, appellant was duly appointed city attorney and qualified as such; that the fiscal year of said city ends on May 1 of each succeeding year, "and that all commissions for appointive offices shall expire May 1 of each year"; that J. G. Maxon was mayor, and J. M. Harris, R. B. Glover, Jerome Crowley, Charles Nieman, Harry Jordan and Fred Hookstadt were the aldermen during the time in question; that by ordinance J. G. Maxon, J. M. Harris, R. B. Glover and Jerome Crowley were constituted the board of local improvements of said city; that said board of local improvements formulated plans, etc., for the paving of certain streets of said city, and that such improvements were divided into districts known as special assessment numbers 18, 19, 20, 21, 22 and 23; that the petitions were filed, the hearings were had and the assessments were confirmed as to special assessments numbers 18, 19, 20, 21 and 22 before April 1, 1926, and as to special assessments 23, 24 and 25 before June 30, 1926. Bids were received and contracts let on special assessments 18, 19, 20, 21 and 22 on April 20, 1926.

It was further stipulated that at a meeting of the board of local improvements on May 12, 1926, it was moved and carried that appellant be employed as attorney for said board and that he be empowered to

secure the aid of an assistant or such additional attorneys as he may see fit.

At a meeting of said board of local improvements on July 10, 1926, vouchers were presented, allowed and ordered paid to appellant, for attorney's fees, as follows:

"Paving District #18—dated June 28, $190.64
Paving District #19—dated June 1, $1069.60
Paving District #20—dated June 1, $1515.30
Paving District #21—dated June 1, $107.60
Paving District #22—dated June 1, $210.14."

"With the understanding that James J. McCauley will defray all court costs of said improvements, and pay all fees of other attorneys engaged with him in said proceedings."

On June 20, 1926, vouchers were issued by said board to appellant in special assessment 23 for $224.52; in special assessment 24, $103.20; and in special assessment 25, $100.98.

It was further stipulated that on June 1, 1926, a check, duly signed by the mayor and tested by the clerk was "drawn to pay the salary of said James J. McCauley as city attorney for the city of Harvard for the month of May 1926," and that said check was delivered on June 1, 1926, to appellant; that on July 1, 1926, a similar check was issued and delivered to appellant to pay his salary for the month of June as city attorney; that ordinance 167 of said city provides: "The city attorney shall receive twenty-five ($25.00) dollars per month. In addition to his duties as city attorney, he shall perform all legal work for the board of local improvements of said city."

It was further stipulated that the special assessment fees paid to appellant with the accrued interest to March 15, 1927, amounted to $3,683.91. It was stipulated that either of said parties might offer such additional evidence as they might see fit, subject to objection.

Appellee offered in evidence the appropriations ordinance for the fiscal years ending May 1, 1926, and 1927, neither of which ordinances made any appropriations for expenses of said board of local improvements.

The two checks above mentioned, for $25 each, were offered and admitted in evidence. The following entry in the docket of Charles J. Vierck, justice of the peace of said city, was admitted in evidence:

"July 19, 1926, at 10 o'clock a. m. case is called and defendant is in court with his attorney, L. B. Palmer, J. J. McCauley, City Attorney, appears for the city with T. M. St. John and Dr. J. G. Maxon as cities witnesses. After being duly sworn and examined the defendant pleads guilty to the charge of being drunk and disorderly."

The minutes of the meeting of May 3, 1926, were admitted in evidence, which said minutes contain the following: "The mayor then announced his appointments, as follows: City Attorney, J. J. McCauley. On motion of Alderman Crowley, seconded by Alderman Harris, the appointments were confirmed by unanimous vote, on call of ayes and nays."

The above and foregoing is, in substance, all of the evidence offered on the part of appellee.

Appellant testified in his own behalf that he did not take the oath of office or file any bond, following his appointment as city attorney on May 3, 1926; that he received the two checks in question and cashed the same; that on or about July 1, 1926, he tendered the amounts so received to the city clerk and notified him not to send any further checks. Appellant further testified that he had a conversation with Dr. Maxon, before May 1, 1926, and stated to him that he did not want the office of city attorney after the expiration of the fiscal year, but would like "to get in on that board of local improvement work, as the attorney"; that Dr. Maxon replied "he would have to take it up with the

board, and he would see me later about it. The appointments were made after the 1st of May for city attorney, and my name was presented as city attorney and confirmed by the council. I had some further talk with Dr. Maxon about this and I told him, 'Doctor, I appreciate your appointing me as city attorney, I appreciate the council confirming it, but I don't want it.' He said, 'Well, I didn't care to make changes,' and, 'who are we going to get to take care of it?' I said to him, 'I don't know. If I am employed by the Board and some work comes up and you want somebody to do it, if you will call on me I will be glad to do it. I won't even make any charge about it, if I get the position because that would pay a good salary. You can always ring me on the phone; if something comes up call me and I will be glad to take care of it.' After this conversation I did go on several occasions to the city hall and police magistrate's and take care of certain police court cases at the request of Dr. Maxon, the mayor of Harvard, and I have answered questions that he asked me relative to the city affairs. I did not get pay from the city of Harvard at any time for that kind of service.''

Appellant further testified: ''Out of the moneys I received as attorney for the board of local improvement I paid . . . three lawyers around $1,100. I paid court costs, to the clerk of the county court, that I believe was eight cases, filing fee, $80, and whatever the sheriff's costs or other additional costs may have been there. I received no part of the moneys back that I paid out of my pocket under this agreement of May 12, 1926. There never was any protest by the board of local improvements or the mayor or president of the board of local improvements at the time the money was paid to me on these vouchers. There was no complaint of any kind at any time after the payment of the money on these vouchers as to the work that I had done.''

With reference to the cashing of the two checks, and as to his services rendered to the city after May 1, 1926, appellant testified: "I want the court to understand that I never accepted those checks, knowing them to be city checks. They got out of my hands inadvertently. . . . I realized I had it and I wanted to give it back. I took it back as soon as I realized it. . . . I was present at the city council during the fiscal year 1926 two or three times when Dr. Maxon called me and asked if I would go down and be present at council meetings. . . . I knew that the city attorney of the city of Harvard had to do the work of the board of local improvements. I knew that ordinance 167 was in existence and that is why I did not want to become city attorney for the next year. I would only be allowed $25 a month. That is one of the reasons I did not qualify."

The grounds relied on by appellant for a reversal of said judgment may be summarized as follows:

First. That the contract entered into by appellant with said board of local improvements was a valid and binding contract.

Second. That even if said board were not authorized to enter into said contract, having voluntarily paid appellant, without mistake of fact, appellee is estopped to question the same.

Third. That appellee was not the proper party to bring said suit, and that if an action would lie at all, it must have been brought in behalf of the taxpayers.

Fourth. That, even though said board was not authorized to make said contract, and even though the city is not estopped to question the same, appellant would be entitled to recoup the amount paid for court costs, attorney fees, etc., and for reasonable compensation for the services rendered by him.

There are three answers to appellant's first proposition:

(a) The costs and expenses of maintaining the board of local improvements, the payment of salaries to the members of said board, and the expenses of making and levying special assessments or special taxes and the letting of contracts, and the entire expenses attending the making and return of the assessment rolls, necessary estimates, court costs, etc., "shall be paid by the city, village or town out of its general fund." Cahill's St. ch. 24, ¶ 226; *Village of DesPlaines v. Winkelman,* 270 Ill. 149–154; *Bond* v. *Hoopeston,* 168 Ill. App. 617–620; *Rieker v. City of Danville,* 204 Ill. 191–194.

While admitting the provisions of said statute, appellant insists that said board acted under the proviso, to the effect that in cities having a population of less than 100,000, the ordinance for the assessment may provide not to exceed 6 per cent of the amount of the assessment, to be applied on "expenses and other costs of making and collecting such assessment."

It might be observed that the local improvements statute does not provide for said board paying or providing for the payment of attorney's fees. "The Local Improvement act regulates the entire proceeding without resort to any other act." *Rieker v. City of Danville, supra,* 194.

(b) Inasmuch as the expenses incurred by the board of local improvements are to be paid out of the general fund, before a contract can be entered into fixing a liability on a city, the funds necessary to pay the same must have been appropriated prior thereto. Cahill's St. ch. 24, art. 7, ¶ 95; *Trustees of Lockport v. Gaylord,* 61 Ill. 276; *May v. City of Chicago,* 222 Ill. 595–599; *DeKam v. City of Streator,* 316 Ill. 123–131; *Ferry v. National Motor Underwriters,* 244 Ill. App. 241. No such appropriations were made and there was no authority to create a liability against said city therefor.

"While it is true that all local improvements to be paid for by special assessment or special taxation must originate with the board of local improvements, it is equally true that the board of local improvements is but one of the departments or agencies of the city government, and subject to its direction and control. . . . The powers, duties and functions of the board of local improvements in the premises are confined to investigating, recommending and supervising such improvements." *People v. City of Rock Island,* 271 Ill. 412–427, citing *City of Lincoln v. Harts,* 266 Ill. 405. To the same effect is *Givins v. City of Chicago,* 188 Ill. 348–362; *People v. Faherty,* 306 Ill. 119–128.

It would therefore follow that, if the city council was not empowered to make said contract, certainly the board of local improvements could not do so.

(c) Prior to May 1, 1926, appellant had been regularly appointed and served as city attorney. Appellant was renominated and confirmed by the city council as city attorney, of which fact he had notice. While he did not file a bond or take the oath as city attorney, he appeared for said city before justices of the peace, and from time to time consulted and advised with the mayor and city council. For the months of May and June he was delivered salary checks which he cashed. About July 1, or shortly thereafter, he tendered the amount received on said checks to the city clerk, stating at that time that he desired that no further checks be mailed him as such city attorney. The record also discloses that practically all of the work in connection with assessments 18, 19, 20, 21 and 22 had been completed prior to May 1, 1926, at a time when, concededly, appellant was the city attorney for said city, and that the work on assessments 23, 24 and 25 had been practically completed by July 1, 1926, at a time when appellant was the *de facto* city attorney of said city. *People v. McCann,* 247 Ill. 130, 143–145.

The ordinance fixing the right and duties of the city attorney, etc., provided expressly that he should perform "all legal work for the board of local improvements of said city." Appellant was therefore not in a position to enter into a contract, either with the city or said board, by which he should receive extra compensation for his services. *Gathemann v. City of Chicago,* 263 Ill. 292; *City of Decatur v. Vermillion,* 77 Ill. 315. A person dealing with a municipal corporation is charged with knowledge of the limitations of the power of that corporation to make contracts. *Snyder v. City of Mt. Pulaski,* 176 Ill. 397; *City of Danville v. Danville Water Co.,* 178 Ill. 299, 319; *Hope v. City of Alton,* 214 Ill. 102; *May v. City of Chicago, supra.*

Second. Appellant in effect contends that appellee city is estopped from questioning the payment to him, for the reason that the same was voluntarily made without "any mistake of fact."

Section 3 of article 7, chapter 24, paragraph 94, Cahill's Statute, provides among other things:

"Neither the city council nor the board of trustees nor any department or officer of the corporation shall add to the corporation expenditures in any one year anything over and above the amount provided for in the annual appropriation bill of that year," etc.

In *DeKam v. City of Streator, supra,* the court at page 129 says:

"Section 208 of division I of the Criminal Code was and is as follows: 'Every person holding any public office (whether State, county or municipal), trust or employment, . . . who shall be guilty of contracting, directly or indirectly, for the expenditure of a greater sum or amount of money than may have been, at the time of the making of the contracts, appropriated or set apart by law . . . shall be fined not exceeding $10,000, and may be removed from his office, trust or employment.'

"A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. (*Botkin v. Osborne*, 39 Ill. 101; *Wells v. People*, 71 id. 532; *Board of Education v. Arnold*, 112 id. 11; *Penn v. Bornman*, 102 id. 523; *Cincinnati Mutual Health Assurance Co. v. Rosenthal*, 55 id. 85; *Borough of Milford v. Milford Water Co.*, 124 Pa. 610; *Berka v. Woodward*, 125 Cal. 119; *Levinson v. Boas*, 150 id. 185.)"

The court in the same case at page 136, further says:

"The city cannot be estopped to dispute the validity of a contract which it had no power to make, for the reason that it has received the consideration. 'Every one is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts simply because it has done them and received the consideration stipulated for.—*Stevens v. St. Mary's Training School*, 144 Ill. 336; *Hope v. City of Alton*, 214 id. 102; *May v. City of Chicago*, 222 id. 595; *People v. Parker*, 231 id. 478.' *Eastern Illinois Normal School v. City of Charleston*, 271 Ill. 602."

Third. The fund here sued for belongs to appellee city, and it is the proper party to bring the suit. *People v. Holten*, 259 Ill. 219–222; *People v. Holten*, 287 Ill. 225–230; *People v. Parker*, 231 Ill. 478–480.

Fourth. On the proposition that appellant should be allowed to recoup the amount which he paid for attorney fees, court costs, etc., and on a *quantum meruit* for the reasonable value of the services performed by him, it is only necessary to say that there is no evidence in the record on which to base said contention. There is no proof of the value of the services rendered, either by appellant or by the attorneys employed by

him. Neither is there any sufficient proof with reference to the amount paid by appellant for court costs, etc. There was no error in the ruling of the court in this connection.

For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*