The People of the State of Illinois ex rel. Michael J.
Mulvey et al., Appellants, v. City of Chicago et al.,
Appellees.

Gen. No. 39,464.

Opinion filed December 14, 1937.

WILLIAM DANIEL JOHNSON, DAMON, WALK & MURRAY, RITTENHOUSE & MAROVITZ and POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, all of Chicago, for certain appellants; MAURICE WALK, WILLIAM DANIEL JOHNSON and ALBERT E. JENNER, JR., of Chicago, of counsel.

JAMES W. BREEN, of Chicago, for certain other appellants; ROY D. KEEHN, CHARLES E. McGUIRE, SAMUEL KART, THEODORE LEVIN, JULIUS H. SELINGER and KERNER, JAROS & TITTLE, all of Chicago, of counsel.

BARNET HODES, Corporation Counsel, for appellees; JOSEPH F. GROSSMAN, First Assistant Corporation Counsel, and J. HERZL SEGAL, Assistant Corporation Counsel, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

After 23 separate suits for mandamus had been filed in the superior court of Cook county, they were consolidated for trial,—*The People of the State of Illinois, ex rel. Michael J. Mulvey et al. v. City of Chi-*

*cago, a Municipal Corporation, et al.,* Consolidated causes No. 35–S–14553. There were many plaintiffs in each suit. In 20 of the suits the plaintiffs, who were employees of the City of Chicago (hereinafter called the City) in its corporate capacity, alleged that the city council, in the annual appropriation bills for the years 1932, 1933, 1934 and 1935, fixed their salaries at certain amounts and then failed to appropriate sufficient moneys to pay the salaries fixed. In three of the suits the plaintiffs were employees of the Board of Election Commissioners of the City of Chicago, the Municipal Tuberculosis Sanitarium, or the House of Correction. We shall refer later to the claims in these three suits and the defenses interposed to the same. As to the 20 suits, the defenses, briefly stated, were, first, a denial that the city council failed to appropriate sufficient moneys to pay the salaries fixed, and an allegation that the respective amounts appropriated in the annual appropriation bills for the salaries of said plaintiffs constituted their salaries and that the City's liability is limited to the amounts appropriated; second, that plaintiffs had been guilty of laches and that the City had been seriously prejudiced thereby; third, that the issuance of the writ would cause confusion, disorder, and grave public inconvenience, and would result in disarranging the public service. The 23 consolidated suits came on for trial by the trial court upon the pleadings and a stipulation of facts. During the progress of the hearing it was agreed that the suit *People of the State of Illinois, ex rel. Philip McGuire et al. v. City of Chicago, a Municipal Corporation, et al.,* superior court No. 36–S–9846, be tried separately, and it was determined adversely to the plaintiffs therein upon the pleadings. We shall refer to this suit later. On January 29, 1937, a judgment was entered in the remaining consolidated suits denying the writs asked and dismissing the petitions. The plaintiffs

therein filed one appeal in this court, *People of the State of Illinois, ex rel. Michael J. Mulvey et al. v. City of Chicago, a Municipal Corporation, et al.*, Gen. No. 39,464. The plaintiffs in *People, ex rel. Philip McGuire et al. v. City of Chicago, a Municipal Corporation, et al.* filed a separate appeal in this court, Gen. No. 39,458, but we entered an order consolidating the two appeals for hearing.

We shall first consider defendants' contention that all of the plaintiffs in both appeals have been guilty of such laches as bars their claims, even if they were valid, for the reason that if this contention is sustained the appeals must be determined adversely to all of the plaintiffs. In support of defendants' contention they call attention to the following undisputed facts: That plaintiffs knew immediately after the passage of the 1932 annual appropriation bill that sufficient moneys had not been appropriated to pay them the salaries they now claim they were entitled to under the ordinance; that instead of then asserting their alleged rights, by demand, and suit, if necessary, they acquiesced in the appropriations that were made in that bill and in the annual appropriation bills of 1933, 1934 and 1935, that were drawn in the same form and manner as the bill of 1932; that "each of the petitioners received a warrant . . . for each semi-monthly period of his employment in an amount equal to such semi-monthly portion of the amount appropriated for the salary or wages of the office or position of each of said petitioners; that each of said petitioners presented, or caused to be presented to the City Treasurer each of said warrants and received and accepted the amount thereof for the labor or service stated for said period" of four years; that no demand was ever made on the City to appropriate the amount of money they now claim is due them, or any part of it, until immediately prior to the filing of the instant suits. De-

fendants argue that if plaintiffs had raised, in any way, the question involved in their present claims after the passage of the 1932 appropriation bill, the city council would have been warned of their position, and if the claims were deemed valid, could have met them by drastic economy, and the appropriation bills subsequently passed would have been so worded as to obviate any possible dispute as to their meaning; that the claims of plaintiffs relate to the period of the great depression, when the City, because of grave financial difficulties, was obliged, *inter alia,* to reduce the salaries of its employees in its enforced plan of stringent economy; that when, "immediately prior to the filing of their suits as a basis for instituting mandamus proceedings," demand was made by plaintiffs upon the city council to appropriate the amount they now claim is due them, the council, in the annual appropriation bill for 1936, made the language that applies to plaintiffs' salaries so clear that there can be no dispute as to its meaning. Defendants further argue that the gravity of the situation brought about by the delay of the plaintiffs in making their claims appears from the allegation in the amendment to the answer that the total liability sought to be established by the instant proceedings is in excess of $22,500,000; that other allegations in the said amendment show "that granting the writ in this case will result in hopeless insolvency of the City, that its credit would become seriously impaired and it would be unable to meet its ordinary and necessary expenses unless the salaries of all officers and employes serving the City in the future were reduced so radically that no one would be willing to serve the City," and that under the undisputed facts and circumstances the court, in the exercise of its judicial discretion, was justified in denying the writ.

*People of the State of Illinois, ex rel. Michael J. Mulvey et al. v. City of Chicago, a Municipal Corpora-*

*tion, et al.,* the first of the instant suits commenced, was filed on October 11, 1935. It was stipulated that certain plaintiffs filed a suit in January, 1934, to recover back pay for the year *1931;* that a mandamus writ issued therein and the city council appropriated sufficient moneys to pay said plaintiffs their *1931* "back salaries." That suit, however, has no bearing on the instant appeals, which have to do with the pay of the said plaintiffs for the years 1932, 1933, 1934 and 1935. So far as the claims of plaintiffs in the instant suits are concerned it was stipulated that all of the plaintiffs in all of the suits "made a formal demand on the City Council to appropriate the amount of money claimed by them immediately prior to the filing of their suits as a basis for instituting mandamus proceedings."

In *People v. Ketchum,* 72 Ill. 212, it was held that the writ of mandamus is not a writ of right; that its issuance is discretionary with the court, acting upon existing facts, and viewing the whole case with due regard to the consequences of its action. That ruling has never been overruled nor modified, and has been followed in numerous cases.

The general rule that where a party has slept upon his rights and acquiesced in what has been done, equity will not afford its aid in enforcing his demand, is familiar to all. Equally familiar is another rule, that laches is properly invoked when by delay or negligence to assert a right the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done with reference to the subject matter of the litigation had the right been promptly and properly asserted.

"*Laches* consists of such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great and other circumstances causing prejudice to the other party, operates as a bar. (*Ring*

*v. Lawless,* 190 Ill. 520; *Morse v. Seibold,* 147 id. 318.) ''
(*Carroll v. Houston,* 341 Ill. 531, 538, a *certiorari* case.)

But plaintiffs assert that the doctrine of laches is a defense which may be interposed in a court of equity only. In *Schultheis v. City of Chicago,* 240 Ill. 167, *a mandamus proceeding,* the court said (p. 170):

''It is asserted with great vigor that *laches* cannot be relied upon as a defense in any suit at law, and it is said, to quote the language of counsel, '*laches* is a defense which may be interposed in a court of equity only.'

''This is a mistake. Cases are common in this court in which *laches* has been regarded as affording a defense in proceedings in *quo warranto* and in proceedings in *certiorari,* both of which are at law. *Clark v. City of Chicago,* 233 Ill. 113; *City of Chicago v. Condell,* 224 id. 595; *People v. Hanker,* 197 id. 409; *Trustees of Schools v. School Directors,* 88 id. 100; *People v. Schnepp,* 179 id. 305.

''In the case cited from the 233d we held that a member of the Chicago police force claiming to have been wrongfully removed would be barred by *laches* from his right to have the record of the civil service commissioners reviewed by *certiorari* if he delayed more than six months in beginning his suit unless the delay was satisfactorily explained by the petition for the writ. We are satisfied that we should adhere to the *Kenneally* case.''

It was held in the *Kenneally* case (*Kenneally v. City of Chicago,* 220 Ill. 485) that the writ of mandamus may be denied upon the ground of laches. If it were necessary, numerous mandamus cases might be cited wherein the courts of this State have applied the doctrine of laches.

But plaintiffs, *assuming* that the City is indebted to them for the amounts claimed, further contend that the doctrine of laches cannot apply to the instant suits in

any event, because "the legal effect of delay in demanding the payment of a debt depends *solely* upon the running of the ordinary statute of limitations." The present proceedings are not suits against the municipality, by employees, for wages, but mandamus suits, and the mere fact that the statute of limitations has not tolled as to the alleged debts, would not prevent the application of the equitable doctrine of laches. In *People v. Lueders*, 287 Ill. 107, a mandamus proceeding, the court said (pp. 112–113): "Generally the time limited for bringing actions at law is governed by statutes of limitation, but the equitable doctrine of *laches* is applied in some kinds of actions at law where the court may exercise judicial discretion and there has been such delay in asserting a right as to justify the exercise of such discretion in denial of relief." The issuance of the writ of mandamus, as heretofore shown, is discretionary with the court, acting upon existing facts, and viewing the whole case with regard to the consequences of its action. If plaintiffs' present argument were sound, by years of inaction plaintiffs could lull the City into a sense of security and just before the expiration of the statute of limitations that applies to a debt file a *petition for mandamus* to compel the City and its officials to appropriate the balance of salaries alleged to have been unlawfully withheld from the plaintiffs for the entire period. If such an unconscionable course of action could prevail in a mandamus proceeding, it would necessarily cause great confusion and disorder in a municipality and might financially wreck it. A writ issued under such circumstances would operate as an instrument of injustice, and it is the settled law that the writ will not be granted where it will work injustice to a municipality. Here, the writs, if granted, would place an additional and heavy burden upon taxpayers, already overladen. It is a matter of common knowledge that during the years in

question many departments of the City could not have functioned properly without the aid furnished the City by the national government. Indeed, the efficiency of several departments that are essential to the safety of life and property would have been seriously impaired. Plaintiffs concede, as they must, "the right of the City Council . . . to fix the number of employees that the City may employ and also the right of the said City Council to fix the salaries of its employees at whatever salary rate the City Council, in its discretion, may determine." To demonstrate the great wrong that would be done to the municipality if the writ were allowed in the instant proceeding: If plaintiffs had made the claim, now urged, when the 1932 annual appropriation bill was passed, the city council could have exercised its power to so reduce the salaries of its employees, including plaintiffs, in 1933, 1934 and 1935 as to fully protect the municipality against any loss it might sustain should the plaintiffs' claims under the 1932 appropriation bill be held valid. Due to the failure of plaintiffs to promptly assert their claims the municipality is now confronted with an enormous claim for salaries covering a period of four years. Before the trial court it was conceded, apparently, that if plaintiffs were successful in the instant suits the City would be liable for salaries for the four years in some amount between $20,000,000 and $30,000,000. It is difficult to imagine a case where a defendant would be more prejudiced by the failure of a plaintiff to assert a right than the instant one. Plaintiffs contend that they are not estopped from demanding payment of the balance of the salaries they claim is due them by the fact that they signed pay rolls acknowledging that they received their salaries for the stated salary period and cashed the City vouchers for a lesser sum than the amount of salary they claim was fixed in the annual appropriation bills. It may be conceded that a public officer

whose compensation has been lawfully fixed is not estopped from claiming full compensation by the fact, alone, that he accepted an amount less than that lawfully fixed for his services. We are of the opinion, however, that the signing of the receipts and the cashing of the vouchers are circumstances bearing upon the question of laches. We hold that all of the plaintiffs in the two appeals were guilty of such laches as bars their claims, even if they were valid. Upon that ruling, alone, the two judgments appealed from must be sustained.

We shall consider, however, the main point raised by plaintiffs employed by the City in its corporate capacity: Their petitions allege, in substance, that the city council in its annual appropriation bill for the year 1932 fixed their annual salaries at certain amounts and then appropriated approximately 80 per cent of the said amounts; that the council followed the same procedure in the annual appropriation bills for the years 1933, 1934 and 1935; that as the council failed to make a sufficient appropriation to pay plaintiffs the salaries fixed, mandamus is the proper remedy to compel the council to appropriate sufficient moneys to pay plaintiffs, in full, the salaries so fixed. Defendants contend that the respective amounts appropriated in the annual appropriation bills for the salaries of the said plaintiffs constituted their salaries, and the City's liability is limited to the amounts appropriated.

The material facts are not in dispute. The annual appropriation bill for 1932 contains the following:

"Department of Police.

. . .

|  | Amounts Appropriated |
|---|---|
| Salaries and Wages— | |
| Captain, 54 at $4,000.00 per annum $ | 169,967.16 |
| Lieutenant, 144 at $3,200.00 per annum ...................... | 362,596.32 |

| | |
|---|---|
| Sergeant, 540 at $2,900.00 per annum | 1,232,263.80 |
| Patrolman—first year of service at $2,140.00; second year of service at $2,260.00; third year of service and thereafter at $2,500.00 per annum | 10,390,000.00" |

The foregoing shows the manner in which appropriations were made for the salaries of certain groups of employees in the Department of Police. The following, taken from the same ordinance, shows the manner of appropriating for salaries where a single individual occupied an office:

"Board of Health.

. . .

Amounts
Appropriated

President's Office.

Salaries and Wages—

| | |
|---|---|
| President Board of Health at $10,000.00 per annum | $ 7,868.85 |
| Director of Medical Service at $7,500.00 per annum | 5,901.64 |
| Director of Technical Service and Research at $6,500.00 per annum | 5,114.75 |
| Deputy Registrar of Vital Statistics at $4,600.00 per annum | 3,619.67 |
| Assistant Bureau Chief of Vital Statistics at $3,180.00 per annum | 2,502.29 |
| 60 A | $25,007.20" |

Sec. 8 of the 1932 ordinance provides:

"Section 8. *The amount appropriated in this ordinance for each separate salary and wage item is the amount appearing at the end of the item under the heading 'Amounts Appropriated.'*

"In the case of officers and employes working on a monthly or weekly basis, such item has been determined by taking the annual rate of compensation authorized for each such position by the annual appropriation bill for the year 1931 and deducting therefrom an amount equal to the proportionate salary or wages at such rate for twenty-four days for the period from January 1, 1932 to April 30, 1932 and for fifty-four days for the period from May 1, 1932 to December 31, 1932, the amounts thus deducted being on account of Sundays, Saturday afternoons and such holidays as are fixed by ordinance or by action of the City Council, such deductions being in accordance with the ordinance passed by the City Council on May 4, 1932 and appearing on page 2145 of the Journal of the Proceedings of the City Council of that date.

"In the case of employes working six days per week, of which one may be Sunday, such item has been determined by taking the annual rate of compensation authorized for each such position by the annual appropriation bill for the year 1931 and deducting therefrom an amount equal to the proportionate salary or wages at such rate for one and one-half days per week for fifty-two weeks in the year 1932.

" . . .

"Where appropriations for an activity or service under which any of the employes authorized to be paid or compensated at an annual, monthly or weekly rate appear in this ordinance in a bulk sum or are chargeable against a particular fund or funds under general authorization, without extension of the several salary or wage items under the heading 'Amounts Appropriated,' the amount authorized by this ordinance for each such position, as the appropriation therefor, shall be the rate named less an amount equal to the proportionate compensation at such rate for one and one-half days of each week in the year 1932." (Italics ours.)

To refer to a certain group: In the case of the 144 police lieutenants, it would require $460,800 to pay them at $3,200 per annum, whereas $362,596.32 was the total amount appropriated to pay them, and $2,518.03 was the amount actually appropriated to pay each lieutenant. A like method was followed in the cases of captains, sergeants and patrolmen. Plaintiffs concede, as they must, that the council has absolute discretion in the fixing of the amounts of their salaries but they contend that the duty of fixing some amount is mandatory; that, to use the said group as an example, the council having fixed the salary of a lieutenant at $3,200 per annum, it was under "a peremptory duty" to appropriate a sum sufficient to pay that salary; that the appropriation and payment of a lesser sum did not discharge the obligation of the City, and mandamus was the proper remedy to compel the city council to appropriate a sufficient amount to pay, in full, the salary fixed. Defendants contend that the city council fixed the salary of each lieutenant at $2,518.03 per year; that the figure $3,200 per annum was the amount appropriated for the office in the prior year, and it functions merely as a base to compute the salary of each employee where there is an appropriation for a group. The method employed in fixing the salaries in 1932 was followed in the years 1933, 1934 and 1935, each appropriation bill containing a section substantially like sec. 8 in the 1932 ordinance.

Able lawyers have taken part in the preparation of each of the three exhaustive briefs filed in support of the plaintiffs' position. Defendants filed only one brief, but if it were entirely disregarded in the consideration of these appeals, the strained, labored arguments in support of plaintiffs' position would force us to the conclusion that, aside from the question of laches, plaintiffs have not only entirely failed to show a clear right to the writ but have made it apparent that

the alleged right is a doubtful one, to say the least. Counsel for Mulvey et al. state: "We say that if the City Council did not intend to definitely make up the additional appropriations for 1932 to 1935, as conditions improved, then the Council, by leaving everyone in the dark until 1936, was guilty of a piece of straddling and double-dealing such as is seldom witnessed in legislative halls. . . . No other city administration, in any of our 48 states, has ever attempted a similar course of straddling. . . . That the Council never intended to make even temporary reductions from the salaries of police officers, but temporary *under-appropriations* only, during those lean years, *to be made up 'soon as the financial condition of the City should permit.'*" (Italics ours.) Counsel for Mulvey et al. contend that the city council "fixed the salary of the plaintiffs at definite and specific sums for each year, and then proceeded to appropriate less money than was required to pay the total salaries so fixed by the said City Council." Counsel for McGuire et al. contend that the amounts appropriated and paid to plaintiffs were intended merely as payments on account.

In *Kenneally v. City of Chicago, supra,* it was held (p. 503): "It has also been held that the writ of *mandamus,* being a discretionary writ, will only issue in a case where it appears by law that it ought to issue, and the court will not order it in doubtful cases. (*Commissioners of Highways v. People,* 4 Ill. App. 391.) In *People ex rel. v. Davis,* 93 Ill. 133, we said: 'The court exercises a discretion in granting or refusing the writ, and, if the right be doubtful, it will be refused.'" The writ will not issue unless a clear, legal right is shown. It will never issue in a doubtful case. (*Quernheim v. Asselmeier,* 296 Ill. 494, 499.) The petitioner must show a clear right to have performed the act sought to be coerced, and a duty on the part of the persons sought

to be coerced to perform it. (*People v. Dixon,* 346 Ill. 454, 461.)

"The writ is never awarded unless the right of the relator is clear and undeniable, and the party sought to be coerced bound to act. See also, *The People v. Dubois,* 33 Ill. 9; *The People v. Chicago and Alton Railroad Co.,* 55 id. 95; *Menard v. Hood,* 68 id. 121; *The People v. Illinois Central Railroad Co.,* 62 id. 510; *Universal Church v. Columbia Township,* 6 Ohio 446." (*People ex rel. Phillips v. Lieb,* 85 Ill. 484, 490; *Osborne v. Bradford,* 346 Ill. 464, 467–8.)

"The legal right of plaintiff or relator to the performance of the particular act of which performance is sought to be compelled must be clear and complete." (38 C. J. 582. See the many Illinois cases cited by the writer of the article in support of the text.)

Sec. 3, Part Two, Art. XII, of the Cities and Villages Act (par. 285, ch. 24, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 21.261) provides that the compensation of all officers shall be by salary as fixed in the annual appropriation bill. Sec. 649 of the Revised Chicago Code of 1931 provides that the compensation of all officers, clerks and employees of the City shall be determined and fixed by the city council in the annual appropriation bill. It is conceded that there is no statute or general ordinance that fixes the compensation of any of the plaintiffs who are employed by the City in its corporate capacity, and that the city council has absolute discretion in the fixing of their salaries.

Sec. 2a, Art. VII, of the Cities and Villages Act (par. 93, ch. 24, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 21.193) provides:

"In cities and villages having a population of one hundred and fifty thousand or more, the city council . . . shall, . . . within the first quarter of each fiscal year thereafter, pass an ordinance, to be termed the annual appropriation bill, in which such corporate

authorities, subject to the limitations hereinafter contained, may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation to be paid *or incurred* during such fiscal year. . . . Such appropriation ordinance shall specify the objects and purposes for which appropriations are made and the amount appropriated for each object or purpose. . . ."

By that section, the city council is required to specify in an appropriation ordinance only the object and purpose for which àn appropriation is made, and *"the amount appropriated for each object or purpose."* It will be noted that the above section provides that in the annual appropriation bill the city council "may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation to be paid *or incurred* during such fiscal year." Defendants argue that the city council used the words "salaries and wages" in that part of the 1932 ordinance that relates to the Department of Police to comply with the provision of sec. 2a that the object and purpose for which the money is appropriated must be specified; that the reason the city council pursued the method in question in arriving at the salaries of plaintiffs appears in the answer of defendants, wherein it is stated: "The method adopted by the city council in fixing and determining the current annual rate of compensation of the plaintiffs and all other officers and employes of the city, as hereinbefore described, was for the purpose of preserving a fixed standard of compensation which the city council hoped to restore as a current rate of compensation when the financial condition of the city should permit." It seems to us that one of the reasons that might well have motivated the council in the use of the method in question was a desire to preserve, if possible, the status of each of the plaintiffs in respect to pensions.

In any event, the controlling question is, Were the salaries of the plaintiffs fixed at the base figures or were they fixed at the amounts actually appropriated? In our judgment, the intention of the city council is plainly disclosed by the amounts appropriated and by that portion of sec. 8 of the annual appropriation bill of 1932 which provides: "The amount appropriated in this ordinance for each separate salary and wage item is the amount appearing at the end of the item under the heading 'Amounts Appropriated.'" That provision seems to have been incorporated to negative the possibility that the base figure or standard of salary might be considered as the salary fixed. As defendants argue: "If the city council chooses to arrive at the amount of the salary by first establishing a standard salary and for reasons of economy immediately and contemporaneously with the establishment of such standard, ordering deductions in payment of compensation, there is no legal reason why this cannot be done." If the city council intended that the amount appropriated for each officer was merely a payment on account, such a provision in an annual appropriation bill would be a most unusual one, and it would be expected that such intention would be expressed in apt words; but the annual appropriation bills for the years in question contain no words stating, or plainly indicating, that the amounts appropriated for the salaries of plaintiffs were merely payments on account.

Sec. 4, Art. VII (par. 95, ch. 24, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 21.196) provides:

"No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously

made concerning such expense, except as herein otherwise expressly provided. Pending the passage of the annual appropriation bill for any fiscal year, the city council or board of trustees may authorize heads of departments or other separate agencies of the municipal government to make necessary expenditures for the support thereof upon the basis of the appropriations of the preceding fiscal year. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to said corporation and no moneys belonging thereto shall be paid on account thereof.''

Defendants contend that that section applies to the instant appeals; that the fixing of the salaries comes within the provision that ''no expense shall be incurred by any of the officers or departments of the corporation, . . . unless an appropriation shall have been previously made concerning such expense . . . ;'' that said section applies to the incurring of liability for salaries of employees because it authorizes the heads of departments or other separate agencies of the municipal government to make expenditures upon the basis of the appropriation of the preceding fiscal year; that it authorizes expenditures pending the passage of the annual appropriation bill; that such expenditures embrace salaries of employees because the number of employees and their salaries are not fixed by the city council until the appropriation bill is passed, and in each of the years 1932, 1933, 1934 and 1935 an ordinance was passed, under the title, ''Authority to pay salaries and current expenses pending the passage of the annual appropriation bill for the year.'' Plaintiffs argue that ''the Cities and Villages act and the general ordinances of the City Council expressly provide that the salaries of all municipal officers and employees shall be fixed in the annual appropriation bill, and that such action has never been construed as the

making of a contract in violation of the terms of Section 4," and they argue that said section has no application to the instant appeals. While we do not deem it necessary, in the determination of these appeals, to pass upon the defendants' contention, we may say, however, that sec. 4 is instructive, because it prescribes the manner in which obligations may be *incurred* by municipalities (with exceptions not here material) and provides that before a liability can be *incurred* it must be preceded by an appropriation. The plaintiffs are forced to contend that the council fixed their salaries in the annual appropriation bills at certain amounts and therefore the City is obligated to pay them the full amounts so fixed even though the amounts actually appropriated for their salaries were insufficient to pay them the salaries so fixed. The provision in question, in sec. 4, has always been enforced. (*Keith v. City of DuQuoin,* 89 Ill. App. 36; *DeKam v. City of Streator,* 316 Ill. 123, 132, 134; *Stripe v. City of Waukegan,* 254 Ill. App. 74; *Turner v. City of Chicago,* 76 Ill. App. 649; *Koons v. Richardson,* 227 Ill. App. 477, 483; *Higler v. City of Cairo,* 245 Ill. App. 383; *City of Harvard v. McCauley,* 253 Ill. App. 218, 225; *May v. City of Chicago,* 222 Ill. 595, 599; *Gathemann v. City of Chicago,* 263 Ill. 292, 298; *People v. Coffin,* 282 Ill. 599, 613.)

Plaintiffs' position as to their main point is based, necessarily, upon the theory that the salaries of plaintiffs were fixed in the annual appropriation bills of 1932, 1933, 1934 and 1935 not at the amounts actually appropriated but at the base figures, which, it appears, were the amounts of salaries appropriated for the offices prior to 1932. Plaintiffs fail to cite any authority that sustains their position. Neither law, reason, nor custom, in our judgment, supports it. In *Gathemann v. City of Chicago, supra,* it was said (p. 297): "If a statute or ordinance which authorizes the appropria-

tion of money for the payment of a salary to a public officer or employee is indefinite or uncertain 'the doubt should be resolved by adopting the smaller amount.' (*Tyrrell v. Mayor*, 159 N. Y. 239.)'' We are convinced that we should be announcing a new and dangerous rule to apply in the interpretation of annual appropriation bills if we were to sustain plaintiffs' position. We conclude that the annual appropriation bills fixed the salaries of the plaintiffs employed by the City in its corporate capacity at the amounts actually appropriated. Such cases as *People ex rel. Lyle v. City of Chicago*, 360 Ill. 25, cited by plaintiffs, have no application to the instant question, as they all involve situations where the salaries of the petitioners had been fixed by statute or general ordinance and the city council, in the annual appropriation bill, was required to appropriate the amounts fixed by the statute or general ordinance. In the *Lyle* case, the Supreme Court, after holding that Lyle was entitled to the writ because under sec. 11 of art. 9 of the constitution his salary, as a municipal court judge, could not be reduced by the city council during the term for which he was elected, saw fit to reannounce (p. 30) the following well-established principles to which we have heretofore referred:

''*Mandamus* is not a writ of right, and it is to be awarded or refused in the exercise of judicial discretion. Courts may, in the exercise of such discretion, in view of the consequences attendant upon its issue, refuse the writ, although the petitioner has a clear legal right for which *mandamus* is an appropriate remedy. (*People v. Board of Supervisors*, 185 Ill. 288; *People v. Olsen*, 215 id. 620.) In *People v. Western Storage Co.*, 287 Ill. 612, we said: 'There may be circumstances under which the writ will not operate fairly, will occasion confusion or disorder or will not promote substantial justice, and under which the court

may therefore deny the writ though the petitioner has a clear legal right. . . . ' "

Defendants contend that there is another principle that applies to the instant appeals, viz., that the writ of mandamus will not be granted where it will work injustice or introduce into municipal administration great confusion or disorder, and they cite, in support of their contention, *People ex rel. Krajci v. Kelly,* 279 Ill. App. 22, 28; *Kenneally v. City of Chicago, supra,* 220 Ill. 485, 505, 508; *People v. Olsen,* 215 Ill. 620, 622; *Michigan-Grand Bldg. Corp. v. Barrett,* 350 Ill. 291, 306-7. We may add that our Supreme Court has repeatedly held that the trial court, in the exercise of its discretion, must pay *due regard to the consequences which may result.* The instant contention of defendants, in view of the facts in the present proceedings, is not without force.

Counsel representing the plaintiffs in *People of the State of Illinois, ex rel. Philip McGuire et al. v. City of Chicago, a Municipal Corporation, et al.* have filed a brief in which they argue two points only in support of their contention that the trial court erred in entering the judgment from which they have appealed: (1) "The defendants' answer is insufficient in law, in that it expressly admits most of the essential facts alleged in the petition and does not properly traverse or deny the others," and, therefore, the trial court erred in denying said plaintiffs' motion to strike defendants' answer for insufficiency in law. (2) "The fact that the court must construe the meaning of the ordinances in issue is not any valid ground for refusing the writ of mandamus." Defendants concede point 2, and we find no substantial merit in point 1. When the trial court denied said plaintiffs' motion to strike defendants' answer they "elected to stand by their said motion to strike," and it was thereupon, on January 29, 1937, ordered that the said answer be taken

as true, that the writ of mandamus be denied to said plaintiffs, and that their petition be dismissed. They were allowed, by order, to prosecute a separate appeal to this court upon the common law record.

As to the three suits brought by the plaintiffs who were employees of the Board of Election Commissioners of the City of Chicago, the Municipal Tuberculosis Sanitarium of the City, or the House of Correction of the City, defendants concede that as to their salaries "the authority to fix the salary is vested in bodies or persons other than the City Council of the City of Chicago," and that if those salaries had been fixed by the said bodies or persons, as said plaintiffs contend, it would have become the duty of the council to appropriate therefor; but defendants contend that "the fallacy in petitioners' argument lies in the complete failure of the record to prove that the salaries were fixed at sums higher than the amounts appropriated; that, on the contrary, the stipulation of facts shows that the salaries were fixed at the amounts appropriated, by the proper authorities or were ratified thereafter." The said plaintiffs deny that the record shows that the facts are as stated by defendants. We deem it unnecessary to pass upon this disputed question. We have heretofore held that all of the plaintiffs, including those employed by the said boards, were guilty of such laches as bars their claims, even if they were valid, and we are of the opinion that the defense of laches is even stronger, if possible, as to the plaintiffs employed by the said boards than it is as to the plaintiffs employed by the City in its corporate capacity, for the reason that the claims of the plaintiffs in the three suits are based upon the theory that each of the said boards fixed the number of its employees and the salaries to be paid them, and that it was mandatory on the council, when requested by said boards to do so, to appropriate sufficient moneys to pay the salaries of the em-

ployees of said boards "at the amounts fixed by the said corporate authorities of each of these departments." We hold, however, that the unreasonable delay and neglect of the said plaintiffs in asserting what they call their unquestionable right, taken in connection with the fact that the municipality would be seriously prejudiced by such delay and neglect if their claim were sustained, make them guilty of laches of the grossest kind.

We feel impelled to say that we find no warrant in the record for the severe attacks that have been made upon the honesty and good faith of the city council and the city administration by counsel for certain plaintiffs. Had our attention been called, in apt time, to certain highly improper statements made by these counsel in their "Amendment to Reply Brief for Certain Appellants," we should have stricken that brief from the files. While it is regrettable that the extremely bad financial condition of the City, due to the great depression, necessitated reductions in the salaries of the plaintiffs, it is a matter of common knowledge that during the same period practically all employees in the United States sustained reductions in their salaries or wages. Millions of employees lost their positions, and a very great number of these were forced to go upon relief to obtain support for their families and themselves. Millions are still unemployed and on relief. Despite the adverse conditions that confronted the City it retained in its employ all of the plaintiffs and those engaged in like employment, and it asserts its willingness and hope to restore the former salaries as soon as its financial condition will permit it to do so. We are constrained to believe that the instant claims were the result of an afterthought. The demands upon the municipal corporation are so unconscionable in their nature that the issuance of the

writ of mandamus in the present suits would work a grave injustice to the municipal corporation.

The judgment order of the superior court of Cook county entered January 29, 1937, in *People of the State of Illinois, ex rel. Michael J. Mulvey et al. v. City of Chicago, a Municpial Corporation, et al.,* Consolidated causes No. 35–S–14553, is affirmed.

*Judgment order entered January 29, 1937, affirmed.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.